KAREN LENAHAN, as Special Adm'r of the Estate of Shawn Lenahan, Deceased, Plaintiff-Appellant, v. UNIVERSITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (5th Division)   Nos. 1—02—2513, 1—02—2867 cons.

Opinion filed March 31, 2004.—Rehearing denied May 24, 2004.

John M. Driscoll, P.C., of Waukegan (John M. Driscoll, of counsel), for appellant.

Querrey & Harrow, Ltd. (David E. Neumeister, James M. Bream, and April R. Walkup, of counsel), Schiff, Hardin & Waite (Catherine M. Masters and Neil Lloyd, of counsel), and Stack & Filpi, Chtrd. (Robert A. Filpi and Paul F. Stack, of counsel), all of Chicago, and Covington & Burling, of Washington, D.C. (Theodore Voorhees, Jr., Elliott Schulder, and Richard W. Smith, of counsel), for appellees.

JUSTICE O'BRIEN delivered the opinion of the court:

Plaintiff, Karen Lenahan, as special administrator of the estate of Shawn Lenahan (the decedent), filed a 21-count, fifth amended complaint under the Survival Act (755 ILCS 5/27—6 (West 1998)) and the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 1998)) against defendants, the University of Chicago, the University of Chicago Hospitals, Doctor David Liebowitz, Xcyte Therapies, Inc., Arch Development Corporation, and Doctor Stephanie Williams. Plaintiff

sought damages on numerous theories of liability based on the decedent's death. The trial court dismissed counts XIII, XIV, XVI, XVII, XVIII, XIX, XX, and XXI of plaintiff's fifth amended complaint pursuant to section 2—615 of the Illinois' Code of Civil Procedure (Code) (735 ILCS 5/2—615 (West 1998)). Plaintiff appeals pursuant to Supreme Court Rule 304(a), contending that counts XIII, XIV, XVI, XVII, XVIII, XIX, XX, and XXI sufficiently state causes of action. We affirm in part, reverse in part, and remand for further proceedings.

Plaintiff's fifth amended complaint alleged the following pertinent facts.

The decedent suffered from non-Hodgkin's lymphoma, a type of cancer. He was first treated at Central Du Page Hospital in August 1998, where his type of cancer was misdiagnosed and as a result he received improper chemotherapy that allowed his disease to progress unchecked. After he was rediagnosed by Indiana University Hospital in October 1998, he began a different chemotherapy/radiation treatment plan, which was later discontinued and changed to high-dose salvage chemotherapy.

In November 1998, the decedent went to the University of Chicago Hospitals, where he was treated by Doctor Ginna Laport. Doctor Laport recommended that he be treated with a high-dose chemotherapy/ stem cell transplant regimen. Doctor Laport also recommended that the decedent participate in a phase I clinical trial (referred to as Protocol 8558) at the University of Chicago Hospitals being run by University of Chicago doctors. Protocol 8558 involved a treatment plan whereby some of the patient's T-cells would be collected before the start of the chemotherapy/stem cell regimen; an experimental lab technique would be used to select particular T-cells and stimulate them to produce an immune reaction to cancer cells; the colony of such selected and stimulated cells would be grown and expanded in the lab, outside the patient's body; and the expanded T-cells would be reinfused into the patient's body at the end of the high-dose chemotherapy/stem cell procedure, in the hope that they would fight any remaining cancer cells and help restore the patient's immune system.

The decedent enrolled in Protocol 8558. During the course of the treatment, he died.

In counts XIII and XIV, subparagraphs (a) through (p) of paragraph 26, plaintiff alleged institutional negligence against the University of Chicago (University) and University of Chicago Hospital, Inc. (Hospital), directly and independently, based on each institution's failure to provide and obtain from the decedent an adequate informed consent to participate in Protocol 8558.

In counts XIII and XIV, subparagraph (q) of paragraph 26, plaintiff alleged institutional negligence against the University and Hospital based on their failure to provide competent personnel to observe the treatment given and to remove the decedent at the first sign of adverse symptoms.

In counts XVI and XVII, plaintiff alleged medical negligence against Doctor Liebowitz, based on his involvement as the doctor directing research in Protocol 8558.

In counts XVIII and XIX, plaintiff alleged that Doctor Liebowitz, Xcyte Therapies, Inc. (a privately held biotech company), Arch Development Corporation (the University's business development company), the University and the Hospital conspired to conduct Protocol 8558, knowing that human subjects would be recruited using a consent form that concealed their expectation that 95% of the participants would die.

In counts XX and XXI, plaintiff alleged medical negligence against Doctor Williams.

The trial court dismissed counts XIII, XIV, XVI, XVII, XVIII, XIX, XX, and XXI pursuant to section 2—615 of the Code and entered orders pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)) that there was no just reason for delaying enforcement or appeal. Plaintiff filed this timely appeal.

■ Dismissal of a cause of action pursuant to section 2—615 is appropriate only when it clearly appears that no set of facts could ever be proved under the pleadings that would entitle the plaintiff to recover. *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 115 (1995). On review of an order granting a section 2—615 motion, all well-pleaded facts and all reasonable inferences from them are taken as true. *Mt. Zion Bank*, 169 Ill. 2d at 115. Whether a complaint states a valid cause of action is a question of law, and our review of a dismissal pursuant to a section 2—615 motion is *de novo. Majumdar v. Lurie*, 274 Ill. App. 3d 267, 268 (1995).

## I. THE DISMISSAL OF COUNTS XIII AND XIV, SUBPARAGRAPHS (a) THROUGH (p) OF PARAGRAPH 26

■ First, plaintiff argues that by answering counts XIII and XIV of the original complaint after their first motion to dismiss was denied, defendants waived their right to bring a subsequent section 2—615 motion to dismiss counts XIII and XIV of the fifth amended complaint. Plaintiff cites *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 60 (1994), which held that where a trial court denies a defendant's motion to dismiss a complaint, and that defendant elects to file an answer to the complaint, the defendant waives any defect in the pleading. Plaintiff's

argument is unavailing, as the allegations pled in counts XIII and XIV of the fifth amended complaint differ from the allegations in counts XIII and XIV of the original complaint. Defendants did not waive their right to bring a section 2—615 motion to dismiss the allegations raised for the first time in counts XIII and XIV of the fifth amended complaint.

On the merits, plaintiff argues that the trial court erred by dismissing counts XIII and XIV, subparagraphs (a) through (p) of paragraph 26, which alleged institutional negligence against the University and Hospital, directly and independently, based on each institution's failure to provide and obtain from the decedent an adequate informed consent to participate in Protocol 8558.[1] Specifically, plaintiff alleged that during the decedent's enrollment in Protocol 8558, the University and the Hospital were signatories to a policy stating that they each bear an independent institutional responsibility to obtain informed consent from all human subjects in the clinical trial, and that such informed consents must comply with applicable Food and Drug Administration (FDA) and Department of Health and Human Services (DHHS) rules and regulations as set forth in Titles 21 and 45 of the Code of Federal Regulations (CFR) (21 C.F.R. § 50.25 (2003); 45 C.F.R. § 46.116 (2003)). Pursuant to this policy, the University and Hospital formed an Institutional Review Board to ensure that the consent forms complied with the FDA and DHHS regulations.

Plaintiff pleaded that the University and Hospital deviated from its policy and from the FDA and DHHS regulations by negligently failing to disclose in the decedent's consent form all the risks and alternatives to treatment. Plaintiff pleaded that the decedent's injuries and death were caused by his participation in Protocol 8558 and that the decedent would not have participated in Protocol 8558 if the University and Hospital had provided him with an adequate consent form detailing all the risks and alternatives to treatment.

■ The elements of a negligence cause of action are a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach. *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 294 (2000). Here, plaintiff has adequately pleaded that the University and Hospital owed the decedent the duty to provide him with a consent form complying with FDA and DHHS regulations, that the University and Hospital breached their duty, and that the breach of duty proximately caused his injuries.

---

[1]Elsewhere in her complaint, plaintiff alleged negligence against the University and Hospital based on vicarious liability. Those counts remain pending and are not at issue on this appeal.

This case is similar to *Kus v. Sherman Hospital*, 268 Ill. App. 3d 771 (1995). In *Kus*, a patient who was implanted with experimental intraocular lenses brought suit against Sherman Hospital and a physician for failure to obtain informed consent. *Kus*, 268 Ill. App. 3d at 773. The patient alleged that the consent form that he signed had been modified from the FDA-approved form and did not inform the patient that the lens was experimental and being evaluated for safety and effectiveness. *Kus*, 268 Ill. App. 3d at 774-75.

■ The appellate court noted the general rule that physicians, not hospitals, have the duty to obtain informed consent from their patients. *Kus*, 268 Ill. App. 3d at 780, citing *Pickle v. Curns*, 106 Ill. App. 3d 734, 738 (1982), and *Winters v. Podzamsky*, 252 Ill. App. 3d 821, 825 (1993). The rationale for this rule is that the physician has the knowledge and training necessary to advise each patient of the risks, whereas the hospital does not know the patient's medical history or the details of the particular surgery to be performed. *Kus*, 268 Ill. App. 3d at 780. However, the court further noted that intraocular lens implants were subject to specific FDA regulations regarding informed consent, and that pursuant thereto Sherman Hospital had established an Institutional Review Board (IRB) to assure that a legally effective informed consent was obtained. *Kus*, 268 Ill. App. 3d at 773-76. The court held that "[w]hile we agree that generally a hospital is not in the best position to inform a patient of risks, here it is clear that Sherman Hospital undertook the responsibility to inform the plaintiff of the experimental nature of his surgery." *Kus*, 268 Ill. App. 3d at 780. The court further held that under these "particular facts," a hospital as well as a physician may be held liable for claims arising from the lack of informed consent. *Kus*, 268 Ill. App. 3d at 780-81.

■ Similarly, the FDA regulated Protocol 8558, and the Hospital and University adopted policies and established an IRB to ensure that the consent forms complied with the applicable FDA and DHHS regulations. Under these facts, the Hospital and University may be held liable for claims arising from lack of informed consent.

Defendants argue that the consent form attached to their motions to dismiss negates plaintiff's allegations of negligence. Plaintiff counters that the consent form failed to adequately inform the decedent of the risks involved. Plaintiff has stated a cause of action against the University and Hospital related to the allegedly inadequate consent; it is for the trier of fact to determine the propriety of the consent form.

Defendants also argue that the trial court properly dismissed counts XIII and XIV because they are duplicative of counts XI and

XII. Review of the fifth amended complaint indicates otherwise. Counts XI and XII allege vicarious liability against the University and Hospital based on the alleged negligence of Doctors Laport and Daugherty; counts XIII and XIV allege direct liability against the University and Hospital based on their failure to obtain a proper informed consent. The counts are not duplicative of each other.

Accordingly, we reverse the circuit court's order dismissing counts XIII and XIV, subparagraphs (a) through (p) of paragraph 26, and remand for further proceedings thereon.

## II. THE DISMISSAL OF COUNTS XIII AND XIV, SUBPARAGRAPH (q) OF PARAGRAPH 26

Plaintiff argues that the trial court erred by dismissing counts XIII and XIV, subparagraph (q) of paragraph 26, which alleged that the University and Hospital failed to provide adequate and competent personnel to observe the treatment given and remove the decedent from the clinical trial at the first sign of adverse symptoms.

■ This court has held:

"A hospital has a duty to know the qualifications and the standard of performance of the physicians who practice on its premises. To permit a physician on its staff whom the hospital knows or should have known is unqualified or negligent is a breach of the hospital's duty of due care to its patients. To fail to periodically review staff physicians to determine whether they follow hospital procedures and render proper care would be a breach of a hospital's duty to its patients. [Citation.]

The hospital is not an insurer of a patient's safety, but it owes him a duty of protection and it must exercise a degree of reasonable care towards him as his known condition requires. [Citation.] A hospital can be charged with negligence for failing to review and, in certain instances, supervise the medical care being given under a physician's care within a hospital." *Pickle v. Curns*, 106 Ill. App. 3d at 739.

■ Counts XIII and XIV, subparagraph (q) of paragraph 26, adequately state a cause of action against the University and Hospital for failure to review and supervise the decedent's medical care. Accordingly, we reverse the circuit court's order dismissing counts XIII and XIV, subparagraph (q) of paragraph 26, and remand for further proceedings thereon.

## III. THE DISMISSAL OF COUNTS XVI AND XVII

Plaintiff argues that the trial court erred by dismissing counts XVI and XVII, which alleged negligence against Doctor Liebowitz primarily based on the allegedly defective consent form given to the

decedent. In dismissing counts XVI and XVII, the trial count found that Doctor Liebowitz owed no duty to the decedent.

■ In a negligence action for medical malpractice, plaintiff must prove a duty owed by defendant, a breach of duty, an injury proximately caused by the breach, and resultant damages. *Reynolds v. Decatur Memorial Hospital*, 277 Ill. App. 3d 80, 85 (1996). A physician's duty is limited to those situations in which a direct physician-patient relationship exists or there is a special relationship such as when a physician is asked by another physician to provide a service to a patient, conduct laboratory tests, or review test results. *Bovara v. St. Francis Hospital*, 298 Ill. App. 3d 1025, 1030 (1998).

Plaintiff pleaded that Doctor Liebowitz was the sponsor and principal investigator of Protocol 8558, and that he personally designed and/or devised all aspects of Protocol 8558, including eligibility criteria; pretreatment evaluation; and the treatment plan. The treatment plan devised by Doctor Liebowitz included the timing, choice and dosages of the chemotherapy drugs to be administered to each patient in Protocol 8558; the timing, choice, and dosages of stem cells to be reinfused into the patient; the timing, choice, and dosages of the laboratory manufactured, co-stimulated T-cells to be reinfused into each patient in Protocol 8558; and the consent form to be obtained from each patient.

Plaintiff pleaded that on or about November 24, 1998, Doctor Liebowitz approved and enrolled the decedent for participation as the last human subject in Protocol 8558. The decedent signed a consent form drafted by Doctor Liebowitz.

Plaintiff pleaded that Doctor Liebowitz directed the doctors in administering the treatments to the patients in Protocol 8558, including the decedent. On January 21, 1999, the decedent's T-cells were collected, then analyzed, counted, phenotyped and charted by Doctor Liebowitz, then cryopreserved. On or about January 22, 1999, the decedent was infused with an experimental high-dose mobilization chemotherapy regimen selected and directed by Doctor Liebowitz. On February 18, 1999, the decedent was started on a five-day infusion of high-dose bone marrow ablative chemotherapy regimen selected and directed by Doctor Liebowitz. On or about February 25, 1999, Doctor Liebowitz started his 14-day experimental process of growing and expanding the decedent's stored T-cells *ex vivo*. During these 14 days, Doctor Liebowitz analyzed and assessed the growth and expansion of the decedent's T-cells and controlled all aspects of this co-stimulation process.

■ By pleading that Doctor Liebowitz provided services to the decedent, conducted laboratory tests, and reviewed test results,

plaintiff sufficiently pleaded a special relationship between Doctor Liebowitz and the decedent. Doctor Liebowitz's active role in the decedent's care distinguishes this case from *Reynolds v. Decatur Memorial Hospital*, 277 Ill. App. 3d 80 (1996), and *Gathings v. Muscadin*, 318 Ill. App. 3d 1091 (2001). In *Reynolds*, the appellate court found no special relationship where a doctor gave an informal opinion at the request of the treating physician, but otherwise provided no other services for the patient. *Reynolds*, 277 Ill. App. 3d at 85. In *Gathings*, the appellate court found no special relationship where the doctor declined to consult with the treating physician about the patient. *Gathings*, 318 Ill. App. 3d at 1094. Unlike *Reynolds* and *Gathings*, the plaintiff here has pleaded that Doctor Liebowitz performed a myriad of services for the decedent, *e.g.*, he enrolled the decedent in Protocol 8558, drafted the consent form signed by the decedent, directed doctors in administering chemotherapy and collecting T-cells from the decedent, analyzed the T-cells that were collected as part of the decedent's treatment, and grew and expanded the decedent's T-cells.

This case is similar to *Bovara*, in which the appellate court held that a physician-patient relationship could be found where the doctors consulted with the decedent's treating physicians, examined his angiogram, and recommended angioplasty. *Bovara*, 298 Ill. App. 3d at 1031-32. Similar to *Bovara*, plaintiff pleaded here that Doctor Liebowitz directed doctors in their treatment of the decedent, performed laboratory tests and examined test results. Doctor Liebowitz's conduct was sufficient to establish, at this preliminary pleading stage, a special relationship and corresponding duty toward the decedent.

Defendants argue that no special relationship existed, because Doctor Liebowitz never personally met with the decedent. Defendants' argument is unavailing, as a special relationship may exist even in the absence of any meetings between the physician and patient, where the physician performs services for the patient. See *Bovara*, 298 Ill. App. 3d at 1031-32. As discussed, Doctor Liebowitz performed many services for the decedent; accordingly, plaintiff has sufficiently pleaded a special relationship between Doctor Liebowitz and the decedent.

Defendants also argue that no special relationship existed because Doctor Liebowitz did not provide any services unique to the decedent, but instead performed the same services for all the members of Protocol 8558. Defendants cite no authority for their proposition that a special relationship only exists where the physician performs services unique to the patient. The special relationship turns, not on the uniqueness of the services provided, but rather on whether such services are sufficient to impose a duty on the physician. Here, as discussed, plaintiff has pleaded sufficient services to establish, at the

pleading stage, a special relationship and corresponding duty from Doctor Liebowitz to the decedent.

Plaintiff has also adequately pleaded in subparagraphs (a) through (w) of counts XVI and XVII that Doctor Liebowitz was negligent for enrolling and, later, failing to remove the decedent from Protocol 8558, for failing to provide competent health care providers, and for failing to draft an adequate informed consent. Plaintiff adequately alleged that Doctor Liebowitz's negligence caused the decedent to receive treatment that caused him a myriad of injuries.

Accordingly, plaintiff's fifth amended complaint states a cause of action for negligence against Doctor Liebowitz, as it adequately alleges a special relationship and corresponding duty between Doctor Liebowitz and the decedent, breach of duty, proximate cause, and damages.

Defendants argue that the consent form attached to their motions to dismiss negate plaintiff's allegations of negligence. Plaintiff counters that the consent form failed to adequately inform the decedent of the risks involved. Plaintiff has stated a cause of action in negligence against Doctor Liebowitz related to the allegedly inadequate consent; it is for the trier of fact to determine the propriety of the consent form.

Therefore, we reverse the circuit court's order dismissing counts XVI and XVII and remand for further proceedings thereon.

## IV. THE DISMISSAL OF COUNTS XVIII AND XIX.

Plaintiff argues that the trial court erred by dismissing counts XVIII and XIX, which alleged that Doctor Liebowitz, Xcyte Therapies, Inc. (a privately held biotech company), Arch Development Corporation (the University's business development company), the University and the Hospital conspired to conduct Protocol 8558, knowing that human subjects would be recruited using a consent form that concealed their expectation that 95% of the participants would die.

Civil conspiracy is an intentional tort and requires proof that two or more persons knowingly and voluntarily participate in a common scheme to commit an unlawful act or a lawful act in an unlawful manner. *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 133 (1999). To state a claim for civil conspiracy, plaintiff must allege an agreement and a tortious act committed in furtherance of that agreement. *McClure*, 188 Ill. 2d at 133.

Plaintiff pleaded that the defendants agreed to develop a cancer treatment and to commercialize the treatment process for widespread use. Plaintiffs failed to allege facts sufficient to show that the defendants knowingly and voluntarily participated in a common scheme to commit any tortious acts in relation thereto.

Accordingly, we affirm the circuit court's order dismissing counts XVIII and XIX.

## V. THE DISMISSAL OF COUNTS XX AND XXI

Plaintiff argues that the trial court erred by dismissing counts XX and XXI, which alleged medical negligence against Doctor Williams. Counts XX and XXI allege that from November 2, 1998, to January 31, 1999, Doctor Williams was negligent in her capacity as research director of Protocol 8558. Counts XX and XXI also allege that beginning on February 1, 1999, Doctor Williams was negligent in her capacity as the decedent's treating physician.

### A. Doctor Williams' Alleged Negligence From November 2, 1998, to January 31, 1999

The trial court found that Doctor Williams owed no duty to the decedent. In a negligence action for medical malpractice, plaintiff must prove a duty owed by defendant, a breach of duty, an injury proximately caused by the breach, and resultant damages. *Reynolds*, 277 Ill. App. 3d at 85. A physician's duty is limited to those situations in which a direct physician-patient relationship exists or there is a special relationship such as when a physician is asked by another physician to provide a service to a patient, conduct laboratory tests, or review test results. *Bovara*, 298 Ill. App. 3d at 1030.

Plaintiff pleaded that from November 2, 1998, to January 31, 1999, Doctor Williams was a director of research in Protocol 8558 and that she was responsible for determining that participants met eligibility criteria before becoming subjects; obtaining adequate informed consents from participants; and monitoring the progress of participants and discontinuing their participation when toxicities occurred.

By pleading that Doctor Williams was responsible for determining that the decedent was eligible to participate in Protocol 8558 and for obtaining informed consent from him and monitoring his progress, plaintiff has adequately alleged a special relationship between Doctor Williams and the decedent. Doctor Williams' active participation in the decedent's treatment and care distinguishes this case from *Reynolds*, 277 Ill. App. 3d at 85, where the defendant doctor merely gave a single informal opinion about the patient, and *Gathings*, 318 Ill. App. 3d at 1094, where the defendant doctor refused to even consult with the treating physician about the patient. Unlike *Reynolds* and *Gathings*, plaintiff here has pleaded that Doctor Williams provided services for the decedent from November 2, 1998, to January 31, 1999, *e.g.*, she determined his eligibility, obtained his consent, and monitored his progress. Accordingly, plaintiff has adequately alleged, at this preliminary pleading stage, that Doctor Williams had a special relation-

ship with and corresponding duty toward the decedent from November 2, 1998, to January 31, 1999.

Plaintiff has also adequately pleaded in subparagraphs (a) through (o) of counts XX and XXI that Doctor Williams was negligent for allowing the decedent to become a participant in Protocol 8558, for failing to remove him from Protocol 8558 when he suffered adverse reactions, and for failing to obtain an adequate informed consent. Plaintiff adequately alleged that Doctor Williams' negligence caused the decedent to receive treatment that caused him a myriad of injuries.

Accordingly, counts XX and XXI of plaintiff's fifth amended complaint state a cause of action for negligence against Doctor Williams, as they adequately allege a special relationship and corresponding duty between Doctor Williams and the decedent, breach of duty, proximate cause, and damages.

Defendants argue that the consent form attached to their motions to dismiss negate plaintiff's allegations of negligence. Plaintiff counters that the consent form failed to adequately inform the decedent of the risks involved. Plaintiff has stated a cause of action in negligence against Doctor Williams related to the allegedly inadequate consent; it is for the trier of fact to determine the propriety of the consent form.

Therefore, we reverse the dismissal of counts XX and XXI as they relate to Doctor Williams' care and treatment of the decedent from November 2, 1998, to January 31, 1999, and remand for further proceedings.

### B. Doctor Williams' Alleged Negligence Beginning February 1, 1999

Plaintiff pleaded that the decedent came under the direct care of Doctor Williams on February 1, 1999. Defendants concede that counts XX and XXI state a cause of action against Doctor Williams regarding her care and treatment of the decedent beginning February 1, 1999. Accordingly, we reverse the circuit court's order dismissing counts XX and XXI as they relate to Doctor Williams' treatment of the decedent beginning February 1, 1999, and remand for further proceedings.

### VII. CONCLUSION

For the foregoing reasons, we reverse the dismissal of counts XIII, XIV, XVI, XVII, XX, and XXI, and remand for further proceedings thereon. We affirm the dismissal of counts XVIII and XIX.

REID and HARTIGAN, JJ., concur.