FIFTH DIVISION
MARCH 30, 2007

1-05-4126

| | | |
|---|---|---|
| JEANINE WEISS, as Administrator of the, | ) | Appeal from the |
| Estate of Nathan Weiss, | ) | Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellant, | ) | |
| v. | ) | No. 03 L 007518 |
| | ) | |
| RUSH NORTH SHORE MEDICAL CENTER, | ) | |
| ERIC NUSSBAUM, BERNARDSHULMAN, | ) | |
| DR. FIDEL ECHEVARRIA, M.R. SCHAFF, M.D. | ) | |
| AND ASSOCIATES, and PATRICK L. DODDY, | ) | |
| as Administrator of the Estate of MARY | ) | |
| R. SCHAFF, deceased, | ) | Honorable |
| | ) | Kathy M. Flanagan, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE TULLY delivered the opinion of the court:

Plaintiff, Jeanine Weiss, as administrator of the estate of Nathan Weiss (the decedent),
filed a complaint against defendants for medical malpractice.  Counts IX and X of the first
amended complaint allege claims under the Wrongful Death Act (740 ILCS 180/0.01 *et seq.*
(West 1998)) and the Survival Act (755 ILCS 5/27-6 (West 1998)) against defendant Doctor
Bernard Shulman.[1]  The trial court granted summary judgment in favor of Doctor Bernard
Shulman on counts IX and X pursuant to section 2-1005 of the Illinois Code of Civil Procedure
(735 ILCS 5/2-1005 (West 1998)).  Plaintiff appeals.  We affirm.

---

[1]The appellee's brief refers to defendant Doctor Robert Shulman and allegations in the
complaint in counts V and VI which are against Doctor Robert Shulman.  However, the brief
then cites to deposition testimony of Doctor Bernard Shulman.  As this appeal concerns a motion
for summary judgment granted in favor of defendant Doctor Bernard Shulman, we will disregard
any reference to Doctor Robert Shulman in appellee's brief.

Plaintiff's first amended complaint alleged the following pertinent facts. On March 3, 2002, the decedent, Nathan Weiss, was brought to Rush North Shore Medical Center by his sister, Cynthia Weiss, to be treated for his deteriorating mental state and condition. The decedent was examined and evaluated by Doctor Eric Nussbaum in the Rush North Shore emergency department. During the course of Doctor Nussbaum's examination, he contacted the defendant, Doctor Bernard Shulman, who was the on-call psychiatrist for Rush North Shore Medical Center.

Doctor Nussbaum stated in deposition testimony that he contacted Doctor Shulman to arrange for follow-up care for the decedent. Doctor Nussbaum stated that when he calls a physician to arrange for follow-up care, he discusses the current situation of the patient. Doctor Nussbaum testified that he discussed the decedent's presentation, his demeanor, his clean state of appearance, his lack of suicidal or homicidal ideation, his mild delusions, his ability for rational thought, and the fact that Doctor Nussbaum offered admission to the hospital which the decedent declined. Doctor Nussbaum testified that he and Doctor Shulman discussed the treatment plan and the medication and the arrangement for follow-up care.

Doctor Nussbaum testified that he did not contact Doctor Shulman to get his opinion; rather, he contacted Doctor Shulman to arrange follow-up care for the decedent. Doctor Nussbaum stated that in arranging follow-up care, he gave a summary of the history and presentation of the decedent to Doctor Shulman. Doctor Nussbaum stated he summarized for Doctor Shulman the discussion he had with the decedent and with the decedent's sister regarding decedent's history of bipolar disorder, decedent's mild delusions, decedent's inability to sleep, and decedent's previous medications. Doctor Nussbaum testified that Doctor Shulman did not assist

him in forming his clinical impressions.

Doctor Bernard Shulman stated in deposition testimony that he never had any professional contact with the decedent. Doctor Shulman further testified that he did not provide any treatment or care to the decedent; he did not instruct any personnel of Rush North Shore Medical Center as to the treatment and care of the decedent; and he never made any clinical impression or diagnosis of the decedent. Doctor Shulman did tell Doctor Nussbaum to have the decedent contact his office for follow-up care.

Doctor Nussbaum spoke to Doctor Shulman on the telephone for approximately five minutes. Thereafter, Doctor Nussbaum prescribed Haldol for the decedent and released him from the emergency room.

The following morning, the decedent awoke early and left his apartment. He told his mother he was going to physical therapy but he never arrived at physical therapy. At approximately 7a.m., the decedent was seen by a passerby in Lake Michigan, and it was later determined that the decedent drowned.

Plaintiff filed a complaint against various defendants alleging medical malpractice. The trial court granted summary judgment in favor of defendant Doctor Bernard Shulman, on the basis that no physician-patient relationship existed between defendant and the decedent. This appeal concerns only defendant Doctor Bernard Shulman.

On appeal, plaintiff contends the trial court erred in determining no physician-patient relationship existed between defendant and Nathan Weiss. The plaintiff argues that questions of fact exist because of the disparities in the deposition testimony of Doctors Nussbaum and

1-05-4126

Shulman concerning their telephone conversation.

In a negligence action for medical malpractice, plaintiff must prove a duty owed by defendant, a breach of duty, an injury proximately caused by the breach, and resultant damages. Reynolds v. Decatur Memorial Hospital, 277 Ill. App. 3d 80, 85, 660 N.E.2d 235 (1996). A physician's duty is limited to those situations in which a direct physician-patient relationship exists or there is a special relationship such as when a physician is asked by another physician to provide a service to a patient, conduct laboratory tests, or review test results. Bovara v. St. Francis Hospital, 298 Ill. App. 3d 1025, 1030, 700 N.E.2d 143 (1998).

Plaintiff argues that this case is similar to Bovara, in which the appellate court held that a physician-patient relationship could be found where the doctors consulted with the decedent's treating physicians, examined his angiogram, and recommended angioplasty. Bovara, 298 Ill. App. 3d at 1031-32, 700 N.E.2d 143. Plaintiff maintains that similar to Bovara, here Doctor Shulman asked about Nathan Weiss' history, symptoms and presentment in the emergency room. Plaintiff asserts that Doctor Shulman evaluated Nathan Weiss' status and discussed his medical opinion with Doctor Nussbaum. Plaintiff argues that it was Doctor Shulman's job to render medical opinions for the assistance of emergency room personnel. Plaintiff maintains that Doctor Shulman's conduct was sufficient to establish a special relationship and corresponding duty toward the decedent.

While we acknowledge that a special relationship may exist even in the absence of any meetings between the physician and patient, where the physician performs services for the patient (see Bovara, 298 Ill. App. 3d at 1031-32, 700 N.E.2d 143), we do not agree that this case is

4

similar to Bovara. Unlike Bovara, the defendant doctor here did not perform any services for the decedent. Doctor Shulman did not perform any tests; he did not analyze any test results; he did not direct Doctor Nussbaum in treating the decedent; he did not form any clinical impressions and he did not render a medical opinion.

This case is similar to Reynolds v. Decatur Memorial Hospital, 277 Ill. App. 3d 80, 660 N.E.2d 235 (1996). In Reynolds, the appellate court found no special relationship where a doctor gave an informal opinion at the request of the treating physician, but otherwise provided no other services for the patient. Reynolds, 277 Ill. App. 3d at 85, 660 N.E.2d 235. Similar to Reynolds, the treating physician here, Doctor Nussbaum, discussed the decedent's condition with the defendant, Doctor Shulman. Both doctors agree they spoke on the phone about the decedent for approximately five minutes. Doctor Nussbaum testified that he summarized for Doctor Shulman the decedent's history of bipolar disorder as well as the decedent's presentment in the emergency room. However, Doctor Nussbaum also testified that the purpose of his contacting Doctor Shulman was to arrange for follow-up care for the decedent, who had refused admittance to the hospital. Doctor Nussbaum stated that Doctor Shulman did not direct him in the treatment of the decedent and did not give him any clinical impressions of the decedent.

We have carefully analyzed the deposition testimony of both Doctors Nussbaum and Shulman, and we do not find any conflict regarding Doctor Shulman's role in the treatment of the decedent.

Accordingly, we find that no material questions of fact exist. We further find that plaintiff has failed to establish a special relationship and corresponding duty between Doctor

1-05-4126

Shulman and the decedent. Therefore, we affirm the circuit court's order granting summary judgment in favor of defendant, Doctor Bernard Shulman.

Affirmed.

O'BRIEN, P.J., and GALLAGHER, J., concurring.