2022 IL App (1st) 211579
No. 1-21-1579
Opinion filed: December 30, 2022

SIXTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| ROBERT R. SLANGER., as the Independent Administrator of the Estate of Janet A. Slanger, Deceased, | Appeal from the Circuit Court of Cook County, Illinois |
| Plaintiff-Appellant, | |
| v. | |
| ADVANCED URGENT CARE, LTD., an Illinois Corporation; ALAN SISSON, M.D.; SILVER CROSS HOSPITAL AND MEDICAL CENTERS, an Illinois Not-For-Profit Corporation; DAVID COLLINS, M.D.; TERRI KENNEDY; EM STRATEGIES LTD., an Illinois Corporation; JESSICA GASIOROWSKI; and TRYNITI METZ, | No. 18 L 013153<br><br>The Honorable<br>John H. Ehrlich,<br>Judge Presiding. |
| Defendants | |
| (David Collins, M.D. and EM Strategies, Ltd., an Illinois Corporation, | |
| Defendants-Appellees). | |

JUSTICE C.A. WALKER delivered the judgment of the court, with opinion.
Justices Oden Johnson and Tailor concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff-appellant, Robert R. Slanger (plaintiff), individually as independent administrator of the estate of Janet A. Slanger (Slanger), deceased, sued Dr. David Collins, Silver Cross Hospital and Medical Center (Silver Cross Hospital), and other medical practitioners for medical malpractice. The circuit court granted summary judgment in favor of Dr. Collins and partial summary judgment in favor of his employer, EM Strategies, Ltd. (EM Strategies), holding that, as a matter of law, Dr. Collins did not owe a duty of care to Slanger because "a special relationship did not exist between [Dr. Collins] and [Slanger]." The circuit court also found that "his approval of Kennedy's treatment and discharge plan is of no consequence."

¶ 2    On appeal, plaintiff argues that Dr. Collins and Slanger formed a physician-patient relationship and, thus, a genuine issue of fact exists as to whether Dr. Collins owed a duty of care to Slanger. We hold that the circuit court erred by granting the motion for summary judgment in favor of Dr. Collins where a genuine issue of material fact exists as to whether Dr. Collins owed a duty of care to Slanger. Hence, we reverse the circuit court's judgment and remand for further proceedings on the complaint.

¶ 3                                    BACKGROUND

¶ 4    The following facts were established from the depositions, affidavits, and records filed in connection with the motion for summary judgment.

¶ 5    At 1:30 a.m. on December 11, 2016, Slanger arrived at the emergency room at Silver Cross Hospital, complaining of a sore throat and difficulty breathing. She signed a consent form which provided:

"I consent to *** hospital services including nursing care rendered me under general and special instructions of the attending, consulting, or emergency department physicians. I am under control of the attending physicians, their assistants or designated on-call or covering physicians, who are in charge of my care and treatment. ***

I further acknowledge that my admission and discharge are arranged by the attending physician. The undersigned further acknowledges that physician services for doctor care related to the preceding sentence will be billed separately by the physician or physician group providing the physician's services and that such charges are separate and in addition to the charges and billing for Silver Cross Hospital."

¶ 6        Terri Kennedy, a nurse practitioner, examined Slanger and diagnosed her with pharyngitis, left cervical lymphadenopathy, and stomatitis. Kennedy prescribed Clindamycin for Slanger's symptoms and recommended that Slanger be discharged from the emergency room with instructions to follow up with her primary care physician. Kennedy documented this information in Slanger's medical chart. Dr. Collins, Kennedy's supervising emergency room physician, reviewed Slanger's medical chart, including her history of present illness, review of systems, physical examination, lab orders, and results. Based on the chart, Dr. Collins opined that Slanger's medical care was "reasonably appropriate," no further medical tests or imaging studies were required, and Slanger's discharge plan was appropriate. Dr. Collins included an

addendum to the medical chart stating, "I was the supervising physician for this patient and agree w/ plan."

¶ 7        The hospital discharged Slanger at 2:45 a.m. At 4 a.m., Slanger called 911 but she could not speak. The dispatcher sent the paramedics to her home. The paramedics found her unresponsively lying in her driveway and administered oxygen. An ambulance took her to a hospital where emergency measures restarted her heart, but she died on December 13, 2016.

¶ 8        On December 7, 2018, plaintiff filed a multicount complaint against several defendants. An amended complaint was filed on April 15, 2019, of which counts VII (wrongful death) and VIII (survival action) were directed against defendant Dr. Collins for his alleged negligent acts and/or omissions. Counts IX (wrongful death *respondeat superior*-actual or apparent agency) and X (survival action *respondeat superior*-actual or apparent agency) were directed against defendant EM Strategies, as Dr. Collins's employer.

¶ 9        In his deposition, Dr. Collins testified that he was employed by EM Strategies. EM Strategies is an independent physician group retained by Silver Cross Hospital to staff the hospital's emergency room department with physicians, mid-level nurse practitioners, and physician assistants. Generally, the mid-level practitioners and physicians see patients independently. However, EM Strategies assigns physicians to work with mid-level practitioners. According to Dr. Collins, the physician's role is to respond to the mid-level practitioner's request for assistance: "I'm there to provide any help if she needs it—he or she, whoever the mid-level would be. If they want me to come see the patient, examine the patient, talk to the patient, and help them make a disposition on the patient, I'm there to do that." After

a mid-level practitioner treats a patient, Dr. Collins reviews the patient's medical charts, including "any labs and imaging," and, if he agrees with the medical plan, "sign[s] off" on the chart. If Dr. Collins disagrees with the medical plan, he will contact the mid-level practitioner and discuss his concerns. A mid-level practitioner is not obligated to take a physician's advice; however, the mid-level practitioner does yield to the advice of the physician. Due to billing purposes, a patient cannot be discharged unless the supervising physician[1] approves it.

¶ 10 Dr. Collins filed a motion for summary judgment on the ground that he owed no duty of care to Slanger. The circuit court granted summary judgment in favor of Dr. Collins and entered a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was no just reason to delay enforcement or appeal of its order. Plaintiff now appeals.

¶ 11 ANALYSIS

¶ 12 This appeal derives from the circuit court's grant of defendant's motion for summary judgment. On appeal of an order granting summary judgment, a reviewing court must determine whether " 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Monson v. City of Danville*, 2018 IL 122486, ¶ 12 (citing 735 ILCS 5/2-1005(c) (West 2012)). The purpose of summary judgment is not to try an issue of fact but to determine whether one exists. *Id.* "A genuine issue of material fact precluding summary judgment exists where the material facts are disputed, or, if the

___

[1]The terms "attending physician" and "supervising physician" are used interchangeably throughout the record. We refer to both terms in the context provided in the record.

material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts." (Internal quotation marks omitted.) *Id.*

¶ 13    Although summary judgment is encouraged to aid the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation. A reviewing court must construe the evidence in the record strictly against the movant and should grant summary judgment only if the movant's right to a judgment is clear and free from doubt. *Id.* "Where doubt exists as to the right of summary judgment, the wiser judicial policy is to permit resolution of the dispute by a trial." *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 249 (1994). We review the circuit court's summary judgment ruling *de novo*. *Monson*, 2018 IL 122486, ¶ 12.

¶ 14    Plaintiff argues that a genuine issue of material fact exists as to whether Dr. Collins owed a duty of care to Slanger because Dr. Collins gave Slanger medical care and treatment thereby establishing a physician-patient relationship. Dr. Collins claims that he and Slanger never formed a physician-patient relationship because he never treated, consulted, or evaluated Slanger.

¶ 15    In a negligence action, a plaintiff must prove that the defendant owed a duty to the plaintiff, a breach of that duty, and an injury resulting from the breach. *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507, 525 (1987). "[A] plaintiff cannot maintain a medical malpractice action absent a direct physician-patient relationship between the doctor and plaintiff or a special relationship *** between the patient and the plaintiff." *Id.* at 531.

¶ 16    A physician-patient relationship is "a consensual relationship in which the patient knowingly seeks the physician's assistance and in which the physician knowingly accepts the

6

person as a patient." *Bovara v. St. Francis Hospital*, 298 Ill. App. 3d 1025, 1030 (1998). A consensual relationship may exist where a physician contacts another physician on behalf of the patient or where a physician accepts a referral of a patient. *Id.* A physician-patient relationship may also exist even in the absence of any actual contact between the physician and the patient when the physician performs specific services for the benefit of the patient. *Weiss v. Rush North Shore Medical Center*, 372 Ill. App. 3d 186, 189 (2007).

¶ 17    Illinois courts have found that a physician-patient relationship existed when the physician takes some affirmative action to participate in the care, evaluation, diagnosis, or treatment of a specific patient. See *Bovara*, 298 Ill. App. 3d 1025; *Lenahan v. University of Chicago*, 348 Ill. App. 3d 155, 164 (2004); *Mackey v. Sarroca*, 2015 IL App (3d) 130219, ¶ 20. For instance, in *Bovara*, the patient met with a cardiologist concerning his heart disease and brought his angiogram for review. 298 Ill. App. 3d at 1027. The cardiologist gave the angiogram to defendants, and after reviewing the angiogram, the defendant-physicians opined that the patient was a candidate for angioplasty. *Id.* The cardiologist testified that the defendants were the physicians who determined when a patient would undergo an angioplasty. *Id.* at 1028. The court found that, although defendants did not have direct contact with the patient, a trier of fact could find that the defendants and the patient formed a physician-patient relationship. *Id.* at 1031-32.

¶ 18    In *Lenahan*, the patient enrolled in a chemotherapy plan to treat his cancer. 348 Ill. App. 3d at 158. The defendant-physician was the sponsor and principal investigator of the chemotherapy plan. *Id.* at 163. The defendant collected, analyzed, and charted the patient's T-

cells, and the patient was infused with a chemotherapy regiment selected by the defendant. *Id.* The court held that because the defendant provided services to the patient, conducted laboratory tests, and reviewed test results, the plaintiff sufficiently pleaded that the defendant formed a special relationship with the patient even though defendant never personally met the patient. *Id.* at 163-64.

¶ 19 In *Mackey*, the patient went to the hospital complaining of severe abdominal and kidney pain. 2015 IL App (3d) 130219, ¶ 3. According to hospital protocol, the treating physician called defendant-physician and gave defendant a description of the patient's condition and the results of her diagnostic test. *Id.* The defendant took notes, advised the treating physician to give the patient medication, and informed the treating physician that he would like to see the patient the upcoming Monday. *Id.* ¶¶ 3-4. In his deposition, defendant testified that he was responsible for giving emergency room physicians advice and recommendations regarding patient's symptoms and conditions *Id.* ¶ 5. Defendant also testified that he had the authority to admit patients to the hospital if he believed the admission was necessary. *Id.* The court determined that, based on these circumstances, the plaintiff's complaint pleaded facts sufficient to establish that the defendant formed a special relationship with the patient. *Id.* ¶ 27.

¶ 20 We find the case here similar to the situations presented in *Bovara*, *Lenahan*, and *Mackey*. Dr. Collins was the supervising physician for Kennedy on December 11, 2016. Dr. Collins testified that a supervising physician assists the nurse practitioner when necessary, reviews patients' medical charts prepared by the nurse practitioner, and "sign[s] off" on the medical plan. After Kennedy examined Slanger, Dr. Collins reviewed Slander's medical chart,

including her history of present illness, physical examination, and lab orders and results. Based on the chart, Dr. Collins opined that Slanger's medical care was "reasonably appropriate," that no further medical tests or imaging studies were required, and that Slanger's discharge plan was appropriate. Dr. Collins testified that a patient could not be discharged unless the supervising physician approved the discharge.

¶ 21    Slanger signed a consent form which stated that "I am under control of the attending physicians" and "I further acknowledge that my admission and discharge are arranged by the attending physician." At the time of Slanger's care, Dr. Collins was the attending physician. See *id.* (finding that defendant-physician and patient formed a special relationship because, *inter alia*, defendant was assigned to consult with treating physicians pursuant to a contractual agreement and defendant was responsible for determining whether to discharge patients from the hospital). Furthermore, Slanger was billed for medical doctor services by EM Strategies, the employer of Dr. Collins. Considering the affirmative acts of Dr. Collins in evaluating, discharging, and billing Slanger, this case presents facts that support the conclusion that Dr. Collins and Slanger formed a physician-patient relationship.

¶ 22    Dr. Collins asserts that this case is more akin to *Reynolds v. Decatur Memorial Hospital*, 277 Ill. App. 3d 80 (1996), *Weiss*, 372 Ill. App. 3d 186, and *Gillespie v. University of Chicago Hospitals*, 387 Ill. App. 3d 540 (2008). In *Reynolds*, the court found that no physician-patient relationship existed where the defendant-physician "did nothing more than answer an inquiry from a colleague." *Reynolds*, 277 Ill. App. 3d at 85. The defendant did not participate in the

care of the patient, such as conducting laboratory test or reviewing test results, and was not paid for his services. *Id.*

¶ 23    In *Weiss*, the court found that the defendant-physician and patient did not have a special relationship because the treating physician only contacted the defendant to discuss the patient's follow-up care. *Weiss*, 372 Ill. App. 3d at 189. The defendant did not provide care or treatment related to the patient's condition at issue and did not give his medical opinion about the patient's condition. *Id.*

¶ 24    In *Gillespie*, the court determined that the defendant-physician and patient did not form a physician-patient relationship because the defendant's review of the patient's test results occurred after the patient was discharged and the defendant's medical report was not used to diagnose or treat the patient. *Gillespie*, 387 Ill. App. 3d at 545-46.

¶ 25    Contrary to Dr. Collins's assertions, we find that *Weiss*, *Gillespie*, and *Reynolds* are inapposite. Here, Dr. Collins's assessment consisted of more than a mere phone inquiry like in *Reynolds* and, unlike *Weiss*, Dr. Collins's assessment pertained to Slanger's medical condition that resulted in her death. Furthermore, in contrast to *Gillespie*, Dr. Collins's evaluation and approval of Slanger's medical chart affected her diagnosis and treatment. Indeed, Dr. Collins testified that, as the attending physician, he was responsible for reviewing patient's medical charts to ensure the proper medical care and treatment was provided to the patient. If he disagreed with a patient's medical care or treatment, he would contact the treating practitioner and express his concerns. After Dr. Collins reviewed Slanger's medical charts, he "sign[ed] off" on the chart to indicate that he approved of medical care and treatment provided to Slanger.

The extent of Dr. Collins's responsibility and involvement in reviewing of Slanger's medical chart and approving her care and treatment demonstrates that, unlike the physician in *Gillespie*, Dr. Collins's medical evaluation impacted Slanger's diagnosis and treatment. Therefore, we find that a genuine issue of material fact exists as to whether Dr. Collins owed a duty of care to Slanger and that the circuit court erred by granting the motion for summary judgment in favor of Dr. Collins.

¶ 26    Plaintiff also argues that a genuine issue of material fact exists as to whether Dr. Collins breached the duty of care he owed to Slanger. Because this argument was not presented to the circuit court, nor the basis for the court's decision, we decline to address it. *People v. Cruz*, 2013 IL 113399, ¶ 20 (an issue not raised in the circuit court is forfeited on appeal).

¶ 27    CONCLUSION

¶ 28    We find that a genuine issue of material fact exists as to whether Dr. Collins owned a duty of care to Slanger, and therefore, the circuit court erred by granting Dr. Collins's motion for summary judgment that resulted in the dismissal of counts VII and VIII against Dr. Collins and counts IX and X against EM Strategies in plaintiff's amended complaint. Accordingly, we reverse the circuit court's judgment and remand for further proceedings on the complaint.

¶ 29    Reversed and remanded.

No. 1-21-1579

---

***Slanger v. Advanced Urgent Care, Ltd.,* 2022 IL App (1st) 211579**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-L-013153; the Hon. John H. Ehrlich, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Patrick Martin Ouimet, of Sarles & Ouimet, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Charles H. Cole and Margaret M. Fitzsimmons, of Lewis Brisbois Bisgaard & Smith LLP, of Chicago, for appellees. |

---