SECOND DIVISION

No. 1-07-1962


| | | |
|---|---|---|
| KAREN GILLESPIE, as Administrator of the Estate of Kenyudra Gillespie, Deceased, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellant and Cross-Appellee, | ) ) ) | Cook County |
| v. | ) ) | |
| UNIVERSITY OF CHICAGO HOSPITALS, a Corporation, VICTORY MEMORIAL HOSPITAL, a Corporation, GLYNIS PANKAJ VASHI, SERGEI SHEVYLYAGIN, CYNTHIA WAIT, YIPING FU, ALAN DAAR, and KENNETH BUETTNER, Defendants | ) ) ) ) ) ) ) | |
| (Glynis Pankaj Vashi, Defendant-Appellee and Cross-Appellant). | ) ) ) ) | Honorable Daniel M. Locallo, Judge Presiding. |


PRESIDING JUSTICE KARNEZIS delivered the opinion of the court:

Plaintiff, Karen Gillespie, as administrator of the estate of Kenyudra Gillespie, brought this medical negligence action following Kenyudra's death. Defendants University of Chicago Hospitals, Victory Memorial Hospital, Sergei Shevlyagin, Cynthia Wait, Yiping Fu, Alan Daar, and Kenneth Buettner either settled with plaintiff or were

dismissed by plaintiff prior to trial. The circuit court subsequently modified the settlement agreement over plaintiff's objection. The cause proceeded to trial solely against defendant Glynis Pankaj Vashi (Dr. Vashi), and the circuit court granted Dr. Vashi's motion for a directed verdict at the close of plaintiff's case. Plaintiff appeals from the circuit court's order granting Dr. Vashi's motion for a directed verdict and from the order modifying the settlement agreement. On appeal, plaintiff contends that (1) the court erred in granting the motion for directed verdict because the evidence established a physician-patient relationship between Kenyudra and Dr. Vashi; and (2) the court erred in modifying the settlement agreement. Dr. Vashi cross-appeals from the circuit court's order denying her motion to transfer venue. For the following reasons, we affirm the circuit court's order granting the motion for directed verdict and the order modifying the settlement agreement.

BACKGROUND

On September 25, 2001, Kenyudra Gillespie, who was 19 years old, went to the emergency room at Victory Memorial Hospital at about 6:15 p.m., complaining of shortness of breath and chest pain. She was initially seen by Dr. Daar. He ordered an electrocardiogram (EKG), a chest X-ray, blood tests and a lung scan. The blood test results indicated that the amount of oxygen in Kenyudra's blood was low and she was anemic. The lung scan showed that she had an enlarged heart, which is also referred to as cardiomegaly. The chest X-ray showed infiltrates in both lower lobes, which was abnormal. Her EKG was also abnormal. It showed a fast heart rate and a lack of blood

flow. Dr. Daar interpreted the EKG results that night but did not believe the results indicated a heart attack.

Subsequently, Kenyudra was seen later that night by Dr. Buettner when Dr. Daar's shift ended. At that time, her heart rate had returned to normal and she was discharged by Dr. Buettner at 12:55 a.m. on September 26. Dr. Buettner diagnosed Kenyudra with "musculoskeletal chest pain." The discharge instructions provided that Kenyudra was to contact her physician or Dr. Vashi for follow-up care.

Dr. Vashi was the internist on call at the hospital when Kenyudra came to the emergency room. It was the hospital's procedure that any patient seen in the emergency room who did not have a primary care physician on staff at the hospital to be assigned to the internist on call as the patient's attending/admitting physician. The hospital registration records indicated that plaintiff did not have a primary care physician on staff at the hospital, so Dr. Vashi was listed on Kenyudra's records as her attending/admitting physician. While Kenyudra was in the emergency room, the emergency room doctors did not consult with Dr. Vashi regarding Kenyudra's condition. Subsequent to Kenyudra's discharge, her tests results from the EKG, lung scan and laboratory tests were placed in Dr. Vashi's "doctor's box" at the hospital. Dr. Vashi interpreted the EKG and wrote a report regarding the EKG on September 27. The report noted that she was unable to rule out a possible heart attack and Kenyudra would need to be examined to "corroborate" her findings. Two copies of the report were generated. Dr. Vashi kept one copy and the other copy was placed in plaintiff's

3

file.  Dr. Vashi sent Kenyudra's insurer a $69 bill for the service.  Neither the hospital nor Dr. Vashi took any further action regarding Kenyudra's care.

On September 27, Kenyudra went to a Lake County clinic, where she had previously received prenatal and postnatal care following the delivery of her baby in July 2001.  She complained of a rash, but did not mention shortness of breath or her visit to the emergency room on September 25.  According to the physician's note regarding Kenyudra's visit to the clinic, the physician listened to Kenyudra's chest and noted that her lungs were clear and her heart rate and rhythm were regular.

On November 7, Kenyudra returned to the emergency room at Victory Memorial Hospital.  Dr. Shevlyagin was identified as her attending/admitting physician.  She had experienced shortness of breath and palpitations over the last month, which had worsened.  Kenyudra showed signs of bilateral lung infiltrates, congestive heart failure and cardiomegaly and was admitted to the hospital.  She was treated for pneumonia with antibiotics.  However, she was then transferred to the intensive care unit after her blood pressure dropped, she had seizures, her heart stopped, and she had to be resuscitated.  Kenyudra was transferred to the University of Chicago Hospitals on November 10 to receive a heart transplant but died from cardiac failure on November 17.  It was ultimately determined that Kenyudra suffered from a rare condition known as postpartum cardiomyopathy, which is an enlarged and weakened heart after pregnancy.

Plaintiff filed this cause of action against defendants alleging medical

negligence. Plaintiff settled with several defendants and dismissed other defendants except Dr. Vashi and the cause went to trial against Dr. Vashi. At the close of plaintiff's case, Dr. Vashi filed a motion for a directed verdict. The motion alleged that plaintiff could not establish a cause of action for negligence because the evidence did not show a physician-patient relationship between Dr. Vashi and Kenyudra and, therefore, Dr. Vashi did not owe Kenyudra a duty. The circuit court agreed and directed a verdict in Dr. Vashi's favor. Plaintiff now appeals.

## ANALYSIS

### Negligence

In a negligence action for medical malpractice, there must be a duty owed by the defendant to the plaintiff, a breach of duty, an injury proximately caused by the breach, and resultant damages. Reynolds v. Decatur Memorial Hospital, 277 Ill. App. 3d 80, 85 (1996). The determination of whether the parties stood in such a relationship to one another that the law would impose on the defendant a duty of reasonable conduct for the benefit of the plaintiff is a question of law to be determined by the court. Kirk v. Michael Reese Hospital & Medical Center, 117 Ill. 2d 507, 525 (1987). The question of duty should take into consideration the likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing that burden upon the defendant. Kirk, 117 Ill. 2d at 526.

A physician's duty is limited to those situations in which a direct physician-patient relationship exists. Reynolds, 277 Ill. App. 3d at 85. The relationship of

physician and patient is a consensual relationship in which the patient knowingly seeks the physician's assistance and the physician knowingly accepts the person as a patient. Reynolds, 277 Ill. App. 3d at 85. A consensual relationship can also exist where other persons contact the physician on behalf of the patient. Reynolds, 277 Ill. App. 3d at 85. However, a physician who gives an informal opinion at the request of a treating physician does not owe a duty of care to the patient whose case was discussed. Reynolds, 277 Ill. App. 3d at 85. Additionally, a physician-patient relationship may exist even in the absence of any meetings between the physician and the patient, where the physician performs services for the patient. Weiss v. Rush North Shore Medical Center, 372 Ill. App. 3d 186, 189 (2007).

In Reynolds v. Decatur Memorial Hospital, 277 Ill. App. 3d 80 (1996), the plaintiff, a minor, was admitted to the hospital and examined by a pediatrician. The pediatrician contacted another physician by telephone and they discussed the plaintiff's condition. The other physician agreed to see the patient the next morning if the treating pediatrician requested him to do so. The other physician did not bill for the consultation. This court held on appeal that as a matter of law, a telephone conference between the plaintiff's treating pediatrician and the other physician regarding the plaintiff's condition did not create a physician-patient relationship between the plaintiff and the other physician. Reynolds, 277 Ill. App. 3d at 85.

In Weiss v. Rush North Shore Medical Center, 372 Ill. App. 3d 186 (2007), the plaintiff was treated in the emergency room by a physician for a mental condition. The

physician contacted the on-call psychiatrist to arrange for follow-up care for the plaintiff. The physician discussed the plaintiff's case with the psychiatrist as well as medication and follow-up care. However, the physician did not consult with the psychiatrist in order to obtain his opinion about the plaintiff. This court held on appeal that there was no physician-patient relationship between the plaintiff and the psychiatrist because the psychiatrist did not perform any services for the plaintiff, did not perform any tests, did not analyze any test results, did not direct the physician in treating the plaintiff, did not form any clinical impressions about the plaintiff and did not render a medical opinion about the plaintiff. Weiss, 372 Ill. App. 3d at 189.

In Bovara v. St. Francis Hospital, 298 Ill. App. 3d 1025 (1998), the plaintiff was examined by a cardiologist at the hospital due to his heart disease. The cardiologist did not review the plaintiff's angiogram, but as part of the usual procedure, gave it to a "cardiac interventionist" to review. According to the cardiologist, the interventionist cardiologists were the physicians who made the decision regarding who was to undergo angioplasty, bypass surgery, or noninterventionist medical care. Two cardiac interventionists reviewed the plaintiff's angiogram and informed the cardiologist that the plaintiff was a candidate for angioplasty. The cardiologist also met with the interventionists and discussed the plaintiff's case. The interventionists did not bill for their time. Plaintiff underwent an angioplasty procedure and during the procedure went into cardiac arrest and was unable to be resuscitated. This court held on appeal that there was a physician-patient relationship between the interventionists and the plaintiff

7

because they consulted with the plaintiff's treating cardiologist, reviewed the plaintiff's angiogram and rendered a medical opinion as to whether the plaintiff was a candidate for angioplasty. Bovara, 298 Ill. App. 3d at 1031. The court further noted that the interventionists were more involved with the plaintiff than merely reviewing a film. Bovara, 298 Ill. App. 3d at 1032.

In Lenahan v. University of Chicago, 348 Ill. App. 3d 155 (2004), this court found a physician-patient relationship because the physician had an active role in the plaintiff's care. Lenahan, 348 Ill. App. 3d at 165. Specifically, the physician provided services to the decedent, conducted laboratory tests and reviewed test results. Lenahan, 348 Ill. App. 3d at 164-65.

To determine whether there was a physician-patient relationship between Dr. Vashi and Kenyudra, we consider whether the facts presented in this case are more similar to the facts presented in Reynolds and Weiss or Bovara and Lenahan.

The facts that weigh in favor of finding no physician-patient relationship as in Reynolds and Weiss are: the emergency room doctors who treated Kenyudra did not contact Dr. Vashi at any time for a medical opinion; Dr. Vashi received Kenyudra's test results and examined her EKG only after Kenyudra was discharged from the hospital; and Dr. Vashi's EKG report was neither used to assess Kenyudra's condition or treat Kenyudra nor did any physician rely on it for a diagnosis.

The facts that weigh in favor of finding a physician-patient relationship are: Dr. Vashi was the on-call physician when Kenyudra was at the hospital; Dr. Vashi was

8

listed as the attending/admitting physician on Kenyudra's medical records; Dr. Vashi received and reviewed Kenyudra's test results and interpreted her EKG; Dr. Vashi wrote a report regarding the EKG, which was placed in Kenyudra's file; and, Dr. Vashi billed Kenyudra's insurer for her services.

We find that this case is more similar to Reynolds and Weiss because Dr. Vashi was not involved in Kenyudra's treatment or care. Dr. Vashi's role of interpreting the EKG and reviewing any other test results came only after Kenyudra was discharged and her report was not used to diagnose or treat Kenyudra. Additionally, Dr. Vashi's interpretation of the EKG was based on the same results that the emergency room doctors had available to them when Kenyudra was in the emergency room. Therefore, we cannot find that Dr. Vashi was actively involved in Kenyudra's care, as were the physicians in Bovara and Lenahan. Although we agree with plaintiff that it can fairly be said that Dr. Vashi did "perform a service" for Kenyudra by interpreting the EKG, and did bill for providing that service, we find it significant that Dr. Vashi's actions occurred after Kenyudra's discharge and in no way played a role in Kenyudra's treatment or care. We conclude that the circuit court's finding of no physician-patient relationship between Dr. Vashi and Kenyudra proper.

### Evidentiary Issues

Next, plaintiff contends that she was deprived of a fair trial because the circuit court improperly excluded evidence at trial, including: an affidavit by Dr. Vashi, the hospital's rules and regulations, plaintiff's expert's testimony that Dr. Vashi was

9

Kenyudra's "attending physician," and plaintiff's expert's testimony regarding the Joint Commission on Accreditation of Hospitals' rules and regulations.

We note that plaintiff failed to file a posttrial motion.  It is well settled that to preserve an issue for appeal, an objection must be made at trial and the issue must be raised in a posttrial motion.  <u>Crawford County State Bank v. Grady</u>, 161 Ill. App. 3d 332, 339 (1987).

In plaintiff's reply brief, she maintains that her failure to file a posttrial motion did not waive review of the evidentiary issues.  She argues that Supreme Court Rule 303(a)(1) (210 Ill. 2d R. 303(a)(1)) "allows for direct appellate review as long as the party seeking the review files a timely notice of appeal."  Plaintiff also argues that because the case ended with a directed verdict rather than a jury verdict, no posttrial motion was necessary to preserve the evidentiary issues for appeal.

Plaintiff neither cites to any case law to support her assertions nor did our research reveal any.  We conclude that because plaintiff did not file a posttrial motion, her claims of evidentiary errors are waived on appeal.

Settlement Allocation

Lastly, plaintiff contends that the circuit court abused its discretion when it modified the settlement agreement despite finding that the settlement agreement was made in good faith.

Plaintiff entered into a settlement agreement with Victory Memorial Hospital, Dr. Daar and Dr. Buettner.  Originally, the settlement agreement provided that the

10

settlement funds, which totaled $1.2 million, were to be allocated $1 million to the survival count, $100,000 to the wrongful death count, and $100,000 to the family expense count. The nonsettling defendants filed a motion to dismiss the family expense count of the complaint, which the court granted. The court modified the settlement agreement, allocating $700,000 to the survival count and $500,000 to the wrongful death count. Plaintiff moved to reconsider the court's allocation and, upon reconsideration, the court allocated $800,000 to the survival count and $400,000 to the wrongful death count.

Expenses for loss of earnings and conscious pain and suffering of the decedent until her death should be apportioned to the survival action and the loss of benefits to the survivors should be apportioned to the wrongful death claim. Muro v. Abel Freight Lines, Inc., 283 Ill. App. 3d 416, 420 (1996). The computation and distribution of losses suffered among these causes of action should relate to the nature of each action. Muro, 283 Ill. App. 3d at 420. The determination of the fairness and reasonableness of the apportionment proceeds is within the circuit court's discretion. Muro, 283 Ill. App. 3d at 419. We will not disturb the circuit court's determination absent an abuse of that discretion. Cianci v. Safeco Insurance Co. of Illinois, 356 Ill. App. 3d 767, 781 (2005).

Plaintiff argues that the court abused its discretion when it revised the terms of the settlement agreement. Here, the court stated that it would not allocate any settlement funds to the family expense count because Kenyudra's mother, as the

11

administrator of her estate, was not legally liable for any of Kenyudra's expenses because Kenyudra was an unmarried adult with her minor daughter as her only heir. Plaintiff argues, citing to Ballweg v. City of Springfield, 114 Ill. 2d 107 (1986), that the fact that the nonsettling defendants raised a defense to the family expense count should not affect the terms of the settlement agreement.

However, the issue in Ballweg was whether the settlement agreement was proper because the plaintiff's cause of action could have been barred by the statute of limitations, had such a defense been raised. Ballweg, 114 Ill. 2d at 122. We find plaintiff's reliance on Ballweg misplaced. Here, the nonsettling defendants' motion to dismiss the family expense count was brought on the basis that it was not a legally cognizable claim. Under these circumstances, we find the court's refusal to allocate any settlement funds to the family expense count proper.

Additionally, the court revised the allocation between the survival count and the wrongful death count because the evidence presented to the court indicated that the period of time for which recovery could be awarded for the survival count was short as compared with the recovery for the wrongful death count. The court reviewed the evidence, which indicated that at the time of Kenyudra's hospitalization, Kenyudra was attending nursing school and was not employed. The court also noted that there was evidence that Kenyudra did not experience much conscious pain and suffering before her death. In contrast, the potential recovery for wrongful death by a minor child who has lost her only parent could be much more significant. Again, under the

12

circumstances of this case, we do not find the court's allocation of $800,000 to the survival action and $400,000 to the wrongful death action to be an abuse of discretion. Incidently, we note that based on the evidence presented, the court could very well have determined that a majority of the settlement funds should have been allocated to the wrongful death count rather than the survival count.

CROSS-APPEAL

Dr. Vashi notes in her brief that if this court affirms the circuit court's order granting her motion for a directed verdict, then her cross-appeal is moot and this court need not address it. Therefore, in light of our determination that the circuit court's order was proper, we need not address Dr. Vashi's cross-appeal.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

SOUTH and CUNNINGHAM, JJ., concur.

1-07-1962

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

---

KAREN GILLESPIE, as Administrator of the Estate of
Kenyudra Gillespie, Deceased,
          Plaintiff-Appellant and
          Cross-Appellee,

v.

UNIVERSITY OF CHICAGO HOSPITALS, a
Corporation, VICTORY MEMORIAL HOSPITAL, a
Corporation, GLYNIS PANKAJ VASHI, SERGEI
SHEVYLYAGIN, CYNTHIA WAIT, YIPING FU, ALAN
DAAR, and KENNETH BUETTNER,
          Defendants

(Glynis Pankaj Vashi,
          Defendant-Appellee and
          Cross-Appellant).

---

No. 1-07-1962

Appellate Court of Illinois
First District, Second Division

December 31, 2008

---

PRESIDING JUSTICE KARNEZIS delivered the opinion of the court.

SOUTH and CUNNINGHAM, JJ., concur.

---

Appeal from the Circuit Court of Cook County.

The Honorable Daniel M. Locallo, Judge Presiding.

---

14

1-07-1962

For APPELLANT, The Law Office of Kenneth C. Chessick, M.D. (Kenneth C. Chessick, M.D., and Magdalena Dworak, of counsel)

For APPELLEE, Smith Amundsen, LLC (Carmel M. Cosgrove, Michael Resis and Jennifer Stuart, of counsel)