FIRST DIVISION 

SEPTEMBER 24, 2001 

No. 1-99-2381

JOEY WATTS,

Plaintiff-Appellant,

v.

CITY OF CHICAGO, a Municipal Corporation,

Defendant-Appellee.

)))))))))

Appeal from the

Circuit Court of

Cook County.

No. 94 M1 306241

Honorable

Randye A. Kogan,

Judge Presiding.

JUSTICE TULLY delivered the opinion of the court:

Plaintiff, Joey Watts, appeals the circuit court's order granting summary judgment for the defendant, the City of Chicago.  On appeal, Plaintiff argues that the circuit court erred in finding that the defendant owed no duty to the plaintiff under either a negligence or willful and wanton standard of care.  We affirm.

Raising several theories of liability, the plaintiff sought recovery for the alleged misconduct of two paramedics employed by the City of Chicago.  The case was initially filed in the Municipal Division of the circuit court.  The City filed a motion for summary judgment which was denied by the Municipal Division judge who found that a genuine issue of material fact existed.  The case was then transferred to the Law Division and the City filed a second motion for summary judgment.  The circuit court granted the second motion for summary judgment in favor of the City of Chicago.

BACKGROUND

The following factual summary is derived from the allegations in the plaintiff's Third Amended Complaint with attached exhibits, along with deposition testimony.  We must note however that the deposition testimony is not exactly harmonious as each witness has a very different perspective of what occurred.

On September 19, 1993, at approximately 2:30 a.m., the plaintiff, Joey Watts, was involved in an automobile accident at the intersection of 120
th
 Street and State Street in Chicago.  The collision occurred in front of a City of Chicago firehouse.  After the collision, Watts exited his vehicle and engaged in an argument with the occupants of the other automobile involved in the accident.  At some point during the altercation, Watts was struck in the head with a hubcap by the driver of the other automobile.  The passenger in Watts' vehicle, Sandra Bullock, was trapped in the vehicle.

Shortly after the incident, a City of Chicago ambulance with two Chicago Fire Department paramedics arrived.  The paramedics helped Bullock onto a stretcher and into the back of the ambulance and administered emergency medical treatment.  Both paramedics state that they asked Watts if he needed medical attention and Watts eventually entered the back of the ambulance.

Watts states that after he got in the ambulance, a group of individuals including the occupants of the other vehicle appeared at the rear door of the ambulance and began threatening him.  They began striking him and he responded by pushing them away.  Watts maintains that the paramedics ordered him to exit the ambulance and threatened to eject Bullock if he did not leave.

One of the paramedics, Gloria Medina, states that Watts was arguing with the individuals who had returned to the scene and that she told him to "take the fight outside [of the ambulance]."  She said that she told him "if you are not going to stop fighting, we need to treat [Bullock], you need to fight outside with them.  You can't fight in here with them."  Medina said that she went to the firehouse in order to get help from the firemen and when she returned from the firehouse, Watts was no longer inside the ambulance.

The other paramedic, Roland Obafemi, states that Watts was fighting with the occupants of the other vehicle when the ambulance arrived on the scene.  Obafemi states that he and Medina put Bullock in the ambulance and asked Watts several times whether he wanted to go to the hospital but Watts did not reply.  Obafemi states that Watts got in and out of the ambulance numerous times as he continued arguing with the others involved in the accident.

Watts exited the ambulance and was struck in the face with a bottle by one of the occupants of the other car.  As a result, Watts lost sight in his left eye.

DISCUSSION

In a cause of action based on negligence, the plaintiff must establish the existence of a duty, a breach of that duty and an injury proximately resulting from a breach of that duty. 
Reynolds v. Decatur Memorial Hospital
, 277 Ill.App.3d 80, 85, 214 Ill.Dec. 44, 660 N.E.2d 235 (1996).  Whether a duty of care exists is a question of law to be determined by the court and thus may be determined on a motion for summary judgment.
  
Wojdyla v. City of Park Ridge
, 148 Ill.2d 417, 421, 592 N.E.2d 1098 (1992).  In reviewing the entry of summary judgment, an appellate court exercises 
de
 
novo
 review and construes all evidence strictly against the movant and liberally in favor of the respondent.  
Barnett v. Zion Park District
, 171 Ill. 2d 378, 385 (1996).  Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 1998);  
Barnett
, 171 Ill. 2d at 385.

First, the plaintiff contends that the trial court erred in granting the defendant's second motion for summary judgment when a prior motion was denied by a different judge.  We disagree.  An order denying summary judgment is interlocutory in nature and may be modified or vacated at any time before final judgment.  
Towns v. Yellow Cab Co.
, 73 Ill.2d 113, 382 N.E.2d 1217 (1978).  Furthermore, we are not persuaded by the plaintiff's assertion that the defendant engaged in "judge shopping" merely because the defendant filed the motion to transfer the case from the municipal division to the law division.  While defendant had previously opposed a motion to transfer, we do not find this to be suggestive of "judge-shopping" and we find no evidence of such in the record.

Next we must determine whether the defendant owed plaintiff a duty.  The plaintiff argues various theories under which defendant owed him a duty of due care and attempts to frame the duty as a "duty to transport."  While we agree that the paramedics here owed Watts a duty of due care in the provision of medical treatment, this is far different from the duty Watts asserts.  We find that the defendant did not owe Watts a duty to protect him from the acts of third parties.

The plaintiff first asserts that defendant, as a common carrier, owed a duty to provide the highest degree of care.  Even if we determine as a matter of law that the defendant operates its ambulances as a common carrier, we cannot find that a duty includes protecting Watts from the acts of third parties.  The plaintiff contends that the fundamental duty is to provide "reasonable and safe transport" and the defendant breached this duty by failing to transport him.  However, the duty to transport must arise from a medical necessity to transport an individual to the hospital.  Plaintiff cites cases from foreign jurisdictions which have held that an ambulance is a common carrier.  The reasoning behind those holdings however, stress that the duty to transport arises because the individual in need of transport is ill or disabled.  In other words, there is a duty to transport because  a medical necessity to transport to a hospital exists.  Here, there is no evidence of a medical necessity to transport Watts to a hospital.  We also find the same holds true to plaintiff's argument that the defendant owes a duty based upon the special relationship of a private carrier of vulnerable persons.  Again, there is no evidence that Watts was medically vulnerable and in need of transport to a hospital.

The plaintiff also asserts that the paramedics owe a duty to exercise due care in treating and transporting a patient based upon a provider-patient relationship.  The plaintiff maintains that the paramedics failed to exercise due care because as "trained rescuers," they did not perform in accordance with training and applicable protocols.  The plaintiff asserts that the paramedics failed to "leave a dangerous scene as rapidly as possible" and failed to "protect a patient from harm in a dangerous situation."

Again, the plaintiff frames the duty owed as a duty to "transport" a patient away from a "dangerous scene."  However, the record does not show a medical necessity for the plaintiff to remain in the ambulance for transportation.  The only reason to keep the plaintiff in the ambulance was to protect him from the third parties.  The paramedics did not owe any duty to protect Watts from third parties.  Moreover, the record shows that a paramedic's general training includes "getting themselves and if possible their patient out of danger."  Here, the deposition testimony of the paramedics shows that they believed the plaintiff to be a part of the dangerous situation.  Thus, the record does not support the plaintiff's position that the paramedics failed to follow protocol.  As previously stated, nothing in the record suggests that the paramedics were negligent in providing medical treatment to the plaintiff or that a medical necessity existed to transport the plaintiff to the hospital.

The plaintiff next asserts that the paramedics owed a duty of care based on a voluntary undertaking.  The plaintiff admits that the scope of such a duty is "strictly limited to the extent of the undertaking."  The plaintiff maintains that here, the paramedics voluntarily undertook a set of comprehensive services consisting of paramedical treatment and transport and "assumed a comprehensive duty of care which included taking reasonable action in furtherance of the plaintiff's health and well-being."

The plaintiff also asserts that the defendant owed him a duty of due care based on the "special relationship" created by an implied promise.  The plaintiff contends that the paramedics offered medical treatment and transport and that Watts accepted their offer.  The plaintiff argues that the defendant voluntarily assumed a quasi-contractual relationship with him under which the defendant owed a duty of care based on the implied promise of reasonable care in treatment and transport.

Again, we refrain from extending the scope of the duty of care of treatment and transport to include a duty to protect from third parties.  There is no evidence that the paramedics failed to provide reasonable care in treatment or transport.

In conclusion, defendant owed no duty to Watts to protect him from the acts of third parties.  Moreover, we cannot find a duty to transport arising from any relationship between the paramedics and Watts because there is no evidence of a medical necessity to transport Watts.  Furthermore, as we have found that no duty exists, we need not address the issue of immunity.  Therefore, we affirm the circuit court's order granting summary judgment for the defendant.

Affirmed.

TULLY, J., with COHEN, P.J., and O'MARA FROSSARD, J., concurring.