Opinion filed January 18, 2022

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| KATHLEEN GIBBONS, | ) | Appeal from the Circuit Court |
| | ) | of Winnebago County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 17-L-24 |
| | ) | |
| OSF HEALTHCARE SYSTEM, a/k/a Saint | ) | |
| Anthony Medical Center, MARTIN FIELDS, | ) | |
| and ANGELA NELSON, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Donna R. Honzel, |
| (Martin Fields, Defendant-Appellee.) | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Presiding Justice Bridges and Justice McLaren concurred in the judgment and opinion.

**OPINION**

¶ 1      After an emergency hospitalization, plaintiff, Kathleen Gibbons, charged defendants, OSF Healthcare System, a/k/a Saint Anthony Medical Center, Dr. Martin Fields, and Angela Nelson (a nurse), with false imprisonment, assault, and medical battery. Plaintiff later settled with the hospital and Nelson, leaving only her false imprisonment claim against Dr. Fields. Plaintiff and Dr. Fields filed cross-motions for summary judgment on that claim, with the trial court ultimately

denying plaintiff's motion and entering judgment on Dr. Fields's behalf. Plaintiff appeals. We affirm.

¶ 2                                     I. BACKGROUND

¶ 3                                     A. Complaint

¶ 4      In relevant part, plaintiff's complaint alleged that, on January 28, 2015, she was found unresponsive at a church, and emergency personnel brought her to Saint Anthony Medical Center (Saint Anthony's) in Rockford. A few hours later, she regained cognitive abilities. According to plaintiff, from January 28, 2015, through February 5, 2015, Dr. Fields acted as her physician by overseeing her care and medications, and he ordered her to take medically invasive tests and denied her the right to refuse medication and leave the hospital. Further, plaintiff alleged that, from January 29, 2015, through February 5, 2015, Dr. Fields (1) failed to properly prepare, serve, initiate, or file any involuntary commitment documents under the Mental Health and Developmental Disabilities Code (Mental Health Code) (405 ILCS 5/1-100 *et seq.* (West 2014)) and (2) ordered, against plaintiff's will, that hospital personnel detain and restrict her liberty by ensuring that she did not leave her room or the hospital. Plaintiff alleged that she was entitled to damages against Dr. Fields for her loss of liberty and false imprisonment.

¶ 5                                     B. Discovery Evidence

¶ 6      The discovery evidence established that, on January 28, 2015, plaintiff was found in the basement bathroom of Holy Family Catholic Church; she was naked and unresponsive, with an empty bottle of prescription pills beside her. The Rockford Fire Department began resuscitation efforts and transported her to Saint Anthony's. Once there, testing revealed that plaintiff had a high blood-alcohol level, and, because she was in respiratory arrest, plaintiff was intubated and transferred to the neuro-intensive care unit.

¶ 7    The next day, at the request of her admitting physician, Dr. Fields examined plaintiff. Dr. Fields has been a licensed psychiatrist since 1969. In 2015, he was a consulting psychiatrist at the hospital, but was not compensated by it, spending most of his time in his own practice. Dr. Fields was "very familiar" with the Mental Health Code and its provisions concerning emergency involuntary admission. After his examination of plaintiff, Dr. Fields concluded that, based upon her medical history, which included a likely drug and alcohol overdose, and because she was presently suicidal and, therefore, a danger to herself, plaintiff required immediate hospitalization and was subject to involuntary admission. Dr. Fields noted that plaintiff was "severely depressed [and] has been in the ER *** several times in last few weeks seeking help." Indeed, during his examination, review of medical records, and evaluation of plaintiff, Dr. Fields learned that plaintiff had been transported to the hospital's emergency department two days prior (*i.e.*, on January 26, 2015) due to an alcohol overdose.[1] On that occasion, plaintiff was found by the Rockford police at the same church, naked and underneath the altar, with a note saying that she was responsible for "Susan Shaw's suicide," that she had been sexually abused at the Holy Family School, to tell certain people that she loved them and was sorry, that she was too far gone, to call her attorney, and to thank for her two Catholic priests. After paramedics brought her to Saint Anthony's, she was transferred to the psychiatric unit at Swedish American Hospital. Against medical advice, on

---

[1] In her deposition, plaintiff agreed that her medical records were voluminous, she testified to other hospitalizations involving alcohol consumption, and she confirmed that she also attempted suicide on January 21 and 26, 2015 (shortly before the admission in this case), February 13, 2015 (shortly after her discharge in this case), and then again on July 12, 2016, with Dr. Fields treating her upon her hospitalization.

January 28, 2015, plaintiff left Swedish American Hospital and, that same day, returned to the church, where, in the incident at issue here, she was again found unresponsive and brought to Saint Anthony's.

¶ 8 Dr. Fields concluded that plaintiff was subject to involuntary admission because she was a danger to herself and needed placement in a facility that offered inpatient mental health care and treatment. As such, and in compliance with the Mental Health Code's procedures, Fields prepared an initial inpatient certificate, which is commonly known in the profession as the "first certificate," to be included with a petition for plaintiff's involuntary admission. Within that certificate, Dr. Fields found that plaintiff was "a person with mental illness who, because of his or her illness is reasonably expected, unless treated on an inpatient basis, to engage in conduct placing such person or another in physical harm or in reasonable expectation of being physically harmed" and that she was "in need of immediate hospitalization for the prevention of such harm."

¶ 9 Plaintiff remained hospitalized at Saint Anthony's from January 28 to February 5, 2015, while the hospital attempted to locate a bed for her at a nearby mental-health facility. According to an affidavit prepared by Dr. Scott Gershan, a psychiatrist and Dr. Fields's expert, the low availability of acute inpatient psychiatric beds results in it being common for patients to wait several days in a hospital before transfer to an inpatient mental-health facility. During her stay at Saint Anthony's, Dr. Fields visited plaintiff nearly daily. On each occasion, after his examination, Dr. Fields prepared a first certificate, opining that hospitalization was appropriate to prevent plaintiff from harming herself. While he agreed in his deposition that, as a result of the certificates, plaintiff was not free to leave the hospital, Dr. Fields testified that *he* did not order hospital security, orderlies, or any hospital personnel to ensure that she did not leave. He explained, "That's not my custom to do that," and, "it's not my responsibility"; rather, he examines the patient, creates the

documentation consistent with his role as a psychiatrist, and inputs the information into the hospital computer system. Beyond that, responsibility for the oversight of the patient goes to the hospital or its staff, as does providing the patient with documentation. Dr. Fields explained that he has no role to ensure that the hospital staff provides the patient with documentation, as that is the role of hospital administration. Similarly, Dr. Fields testified that he has no responsibility to prepare petitions for involuntary admission or to ensure that, if he or she objects to an involuntary admission, a patient receives judicial intervention. As such, in this case, Dr. Fields prepared a first certificate each time he examined plaintiff through her transfer on February 5, 2015, satisfying the statutory requirement that a first certificate be prepared within 72 hours prior to admission to an inpatient mental-health facility.

¶ 10    In his affidavit, Dr. Gershan agreed that Dr. Fields's role is strictly limited to examining and evaluating patients and making a judgment as to whether a patient's acute needs require admission to an inpatient mental-health facility on a mandatory basis. Dr. Fields would not have any involvement in preparing or filing petitions for involuntary admission for the patients he evaluates. If, based upon his evaluation and psychiatric expertise, Dr. Fields determines that involuntary admission is recommended, he would chart his findings in the medical record and prepare a first certificate to accompany a petition. However, the petition itself is the responsibility of the hospital staff. Specifically, as explained by Dr. Gershan, "[i]t is atypical for the medical expert to personally file medical legal documents after completing them." Rather, it is the responsibility of the *receiving* psychiatric facility, through administrative, legal, or social-work staff, to prepare and file a petition for involuntary admission and to provide a copy to the patient.

¶ 11    In her deposition, plaintiff denied that her actions on January 28, 2015, were a suicide attempt, and she testified that she was held at Saint Anthony's against her will. However, plaintiff

acknowledged that the medical personnel who cared for her believed that she had attempted suicide. In addition, plaintiff admitted that, while at Saint Anthony's, she had the use of her cell phone and called her attorney (who represented her both before the trial court and now on appeal), who arrived at the hospital to see her. According to plaintiff, her attorney asked for various documents, but she did not know whether he took any other efforts on her behalf, such as finding another psychiatrist to evaluate her or filing any emergency motions or court petitions to secure her release from Saint Anthony's. On February 5, 2015, when a bed became available at Glen Oaks Hospital (Glen Oaks) an inpatient mental-health facility, plaintiff was transferred there. Apparently, no certificates or processes concerning involuntary admission under the Mental Health Code were completed at Glen Oaks, because, upon her transfer, plaintiff signed *voluntary admission* papers. She was discharged from Glen Oaks on February 10, 2015. Three days later, she made another serious suicide attempt requiring hospitalization and intubation.

¶ 12    In his deposition, Dr. Fields was asked whether, based upon his experience as a psychiatrist, he would agree that nothing he did or did not do for plaintiff caused her harm, and he answered, "that's the understatement." Specifically, Dr. Fields testified that, in his professional psychiatric opinion, had he not prepared the first certificates that supported her commitment, plaintiff would have died from a successful suicide. "[H]ad I not hospitalized her, she wouldn't be here today *** [b]ecause the attempt would have been even worse than it was and she would be dead today. So I'm being sued *** for doing what saved this patient's life." Indeed, plaintiff *agreed* in her deposition that, if she had been released, instead of involuntarily admitted, she might have resumed her drinking to the point of unconsciousness and respiratory arrest: "there was no guarantee I wasn't going to do it again." When asked to describe what injuries she suffered from being held at Saint Anthony's, plaintiff testified simply that she was held against her will for a

lengthy period. She specified that she was not claiming that she suffered psychological damages. She agreed that no psychiatrist or other medical professional told her that the admission exacerbated her mental health issues, because she "didn't seek any treatment for that." Rather, plaintiff explained, her lawsuit concerned the rights of a mental health patient and guideline compliance.

¶ 13                                C. Summary Judgment Motions

¶ 14      Dr. Fields and plaintiff both moved for summary judgment. In her motion, plaintiff argued that Dr. Fields and the hospital followed none of the Mental Health Code's requirements to complete forms for involuntary confinement, file them with the court, obtain a court order for medications and procedures, serve her with the documents, and obtain a second certificate: "the bottom line-they failed!"  Plaintiff noted that, under the Mental Health Code, she could not be held more than 24 hours without a second certificate, which, as the Code provides, must be completed by someone other than the psychiatrist who prepared the first certificate. See 405 ILCS 5/3-610 (West 2014). However, no second certificate was prepared here and she was not released in that period. Plaintiff acknowledged that, to state a cause of action for false imprisonment, she must demonstrate that her personal liberty was unreasonably or unlawfully restrained against her will and that Dr. Fields caused or procured the restraint. Plaintiff asserted that, because he did not comply with the Mental Health Code, Dr. Fields did not act with valid authority and, thus, his restraint of her was unlawful. Specifically, plaintiff asserted that Dr. Fields, "the hospital's consulting physician," supervised her care and completed seven inpatient certificates during her hospital stay and, therefore, he was personally responsible for her false imprisonment. Moreover, plaintiff argued that Dr. Fields could not claim good faith to qualify for an exemption from liability

under the Mental Health Code, where he "filled out seven separate inpatient certificates and not once did he act to comply with the [Mental Health Code]."

¶ 15    Dr. Fields responded that plaintiff's motion "demonstrates a total lack of understanding" of the Mental Health Code by failing to distinguish between the duties of a certifying psychiatrist and an admitting facility and by misstating those duties entirely. In addition, Dr. Fields filed an amended summary judgment motion. Dr. Fields argued that there was no evidence that he restrained plaintiff or ordered that she be restrained, or that he caused or procured plaintiff's detention at Saint Anthony's. Rather, the evidence demonstrated only that, to satisfy the Mental Health Code's requirement that a first certificate be prepared within 72 hours prior to a patient's admission to an inpatient mental-health facility, he prepared a certificate each time that he examined plaintiff and leading up to her transfer. Dr. Fields explained that the evidence reflected that he is not involved in preparing or filing petitions for involuntary admission of patients. Accordingly, Dr. Fields argued, plaintiff could not establish her false-imprisonment claim, in part because he both fulfilled his duties under the Mental Health Code and, where he acted in good faith in preparing each first certificate based on plaintiff's medical history, his examinations of her, and his conversations with the physician who had admitted her and the police officers and paramedics who brought her to the emergency department, he was immune from liability. Dr. Fields argued that plaintiff presented no evidence that he acted in bad faith when preparing the first certificates and, indeed, she admitted that Dr. Fields believed that she had tried to commit suicide.

¶ 16    Finally, Dr. Fields noted that summary judgment was also warranted because imprisonment under legal authority, such as a lawful detention pursuant to the Mental Health Code, cannot be the basis of a false imprisonment claim and, again, because he did not cause plaintiff's restraint.

The evidence reflected that his only role was to evaluate plaintiff and determine whether she posed a risk of harm to herself. Following his evaluations of plaintiff, Dr. Fields prepared first certificates and provided them to the nursing staff so that, once an inpatient bed at another facility was located, the certificates could accompany plaintiff there. Dr. Fields reiterated that, until a bed at an inpatient mental-health facility became available, oversight and supervision of plaintiff was the hospital's responsibility, as was providing her with relevant documents.

¶ 17    Plaintiff did not respond to Dr. Fields's summary judgment motion, nor did she file a reply in support of her own summary judgment motion.

¶ 18    On November 2, 2020, the court held a hearing on the motions. Despite notice, neither plaintiff nor her counsel appeared. The court decided to rule based solely on the written arguments. It denied plaintiff's motion and granted Dr. Fields's motion on the basis that there was no evidence that he had acted in bad faith at any time during his examination or treatment of plaintiff and that the first certificates he had executed were part of the involuntary commitment process. The court stated:

> "It was not for Dr. Fields to decide anything other than whether or not, in his professional opinion, based on all the information available to him, including his exams, she presented a risk of harming herself. Pursuant to 405 ILCS 5/6-103(a)[,] Dr. Fields has civil immunity as long as there was no bad faith and it is uncontested that he was, in fact, acting in good faith. There's nothing at all in the record that would indicate anything other than good faith and actually going above and beyond what was required of him. There's no allegation of any negligence, whatsoever, and his preparations of each first certificate that he filled out, the decision to act on and decide what was being done was all in the hands of [the hospital, which was no longer a defendant]. *** The relevant and important

and prevailing factor is that it wasn't Dr. Fields who ultimately would make the decision to have released the plaintiff after that 24 hours as mandated but it was the responsibility of the hospital who had admitted her[.]"

The court determined that the statutes were clear and that "Dr. Fields simply cannot be said to have falsely imprisoned the plaintiff under the *** factors and elements necessary for false imprisonment ***, and he wholly and fully acted in the utmost of good faith in his interactions and decision making as it pertained to the plaintiff."

¶ 19    Plaintiff moved the court to reconsider, arguing primarily that the court's good-faith finding was inappropriate because it ignored that the authority to detain her was derived from the Mental Health Code, which had procedures that were not followed and, thus, her detention was unlawful. Plaintiff argued that Dr. Fields supervised her care, filled out numerous first certificates, and admitted that the Mental Health Code applied to him; thus, a good-faith finding in such circumstances would allow physicians to keep patients "locked up" without recourse. She argued that Dr. Fields could not claim "good faith" when he both admitted that the Mental Health Code applied to him—but believed that he had no responsibility to facilitate her access to judicial relief or due process—and did not comply with the Mental Health Code.

¶ 20    On January 25, 2021, after hearing argument, the court denied plaintiff's motion to reconsider. In sum, the court reiterated that the Mental Health Code specifically provides that the second certificate must be filed by someone other than the doctor who prepared the first certificate, that it is the responsibility of the director of the admitting facility to file documents with the court, and that the statute does not require the psychiatrist who completes the first certificate to be the

person to initiate judicial proceedings. The court again found that there was no evidence that Dr. Fields completed the first certificates in bad faith.[2] Plaintiff appeals.

¶ 21                                             II. ANALYSIS

¶ 22                       A. Standard of Review and Relevant Statutory Provisions

¶ 23     We first turn to the standard of review. Summary judgment is proper when the pleadings, depositions, admissions, and affidavits on file demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016). Where, as here, the parties have filed cross-motions for summary judgment, they have conceded that there are no genuine issues of material fact and have agreed that only questions of law are involved. *Nationwide Financial, LP v. Pobuda*, 2014 IL 116717, ¶ 24. We review *de novo* the trial court's ruling on cross-motions for summary judgment. *Id.*

¶ 24     Next, we set forth the relevant Mental Health Code provisions. Section 3-600 of the Mental Health Code authorizes a person 18 years of age or older to seek involuntary admission, "to a

---

[2] As an aside, the court also noted:

"It's also important to note, and I didn't talk about it in the decision, but from [plaintiff's] testimony, her attorney came in and visited her while she was in the hospital as did family members and at least in the record that I saw, I don't think I missed it, there was nothing to indicate that she, herself, took any measures to leave or that her attorney took measures for her to leave at the time or her family members took measures or anybody even asked that she be released. I mean, it's just a side issue, but, you know, it is interesting to note that her attorney was in there consulting with her and apparently made no effort to, to do anything about having her released."

mental health facility," of an individual 18 years of age or more, who is "in need of immediate hospitalization." 405 ILCS 5/3-600 (West 2014).[3] Section 3-601 provides:

> "When a person is asserted to be subject to involuntary admission on an inpatient basis and in such a condition that immediate hospitalization is necessary for the protection of such person or others from physical harm, any person 18 years of age or older may present a petition *to the facility director* of a mental health facility in the county where the respondent resides or is present. The petition may be prepared by the facility director of the facility." (Emphasis added.) *Id.* § 3-601(a).

¶ 25    The petition must include certain information (see *id.* § 3-601(b)) and must be accompanied by "a certificate executed by a physician, qualified examiner, psychiatrist, or clinical psychologist which states that the [patient] is subject to involuntary admission on an inpatient basis and requires immediate hospitalization" (*id.* § 3-602). This certificate (*i.e.*, the first certificate) must evince a patient examination occurring "not more than 72 hours prior to admission" and contain "other factual information relied upon in reaching a diagnosis, and a statement as to whether the [patient] was advised of his [or her] rights under Section 3-208." *Id.*

¶ 26    Further,

---

[3] Section 1-114 of the Mental Health Code defines a "mental health facility" as "any licensed private hospital, institution, or facility or section thereof, and any facility, or section thereof, operated by the State or a political subdivision thereof for the treatment of persons with mental illness and includes all hospitals, institutions, clinics, evaluation facilities, and mental health centers which provide treatment for such persons." 405 ILCS 5/1-114 (West 2014).

"As soon as possible but not later than 24 hours, excluding Saturdays, Sundays and holidays, after admission of a [patient] pursuant to this Article, the [patient] shall be examined by a psychiatrist. The psychiatrist may be a member of the staff of the facility but *shall not be the person who executed the first certificate*. If a certificate has already been completed by a psychiatrist following the [patient's] admission, the [patient] shall be examined *by another psychiatrist* or by a physician, clinical psychologist, or qualified examiner. If, as a result of this second examination, a certificate is executed, the certificate shall be promptly filed with the court. *** If the [patient] is not examined or if the psychiatrist, physician, clinical psychologist, or qualified examiner does not execute a certificate pursuant to Section 3-602, the [patient] shall be released forthwith." (Emphases added.) *Id.* § 3-610.

¶ 27    Once the petition is prepared,

"Within 24 hours, excluding Saturdays, Sundays and holidays, after the [patient's] admission under this Article, *the facility director* of the facility *shall file* 2 copies of *the petition, the first certificate, and proof of service of the petition and statement of rights upon the [patient] with the court* in the county in which the facility is located. Upon completion of the second certificate, *the facility director* shall promptly file it with the court and provide a copy to the [patient]. *The facility director* shall make copies of the certificates available to the attorneys for the parties upon request. Upon the filing of the petition and first certificate, the court shall set a hearing to be held within 5 days, excluding Saturdays, Sundays and holidays, after receipt of the petition. The court shall direct that notice of the time and place of the hearing be served upon the [patient], his [or her] responsible relatives,

and the persons entitled to receive a copy of the petition pursuant to Section 3-609."

(Emphases added.) *Id.* § 3-611.

¶ 28    The Mental Health Code defines the "facility director" as the "chief officer of a mental health or developmental disabilities facility or his [or her] designee or the supervisor of a program of treatment or habilitation, or his [or her] designee." *Id.* § 1-104.

¶ 29    The Mental Health Code also provides immunity from liability as follows:

"All persons *acting in good faith* and without negligence in connection with the preparation of applications, petitions, *certificates* or other documents, for the apprehension, transportation, *examination*, *treatment*, habilitation, *detention* or discharge of an individual under the provisions of this Act incur no liability, civil or criminal, by reason of such acts." (Emphases added). *Id.* § 6-103(a).

¶ 30    Finally, we note that, to state a cause of action for false imprisonment, a plaintiff must allege that his or her personal liberty was unreasonably or unlawfully restrained against his or her will and that the defendant caused or procured the restraint. *Doe v. Channon*, 335 Ill. App. 3d 709, 713 (2002).

¶ 31            B. Summary Judgment in Dr. Fields's Favor Was Proper

¶ 32    On appeal, plaintiff asks that we reverse summary judgment in Dr. Fields's favor and enter summary judgment on her behalf. Specifically, plaintiff notes, there is no dispute that she did not receive under the Mental Health Code notice, a second certificate, court access, or due process. It is similarly clear, she contends, that Dr. Fields believed that he owed her no responsibility concerning due process or to facilitate her access to judicial relief under the Mental Health Code and at no time did a court authorize her involuntary commitment. Nevertheless, she argues, the trial court improperly denied her summary judgment motion and granted relief to Dr. Fields based

upon its belief that Dr. Fields acted in good faith and, as such, cannot be held liable. Plaintiff argues that good faith cannot apply where Dr. Fields participated in daily acts that caused her illegal confinement, including his preparation of seven first inpatient certificates. Plaintiff contends that Dr. Fields used the Mental Health Code as a "sword" to illegally confine her, but as a "shield" to claim good faith. She claims, "You cannot have it both ways." Accordingly, plaintiff asserts, if we find that her detention was illegal, then the "participants" cannot be said to have acted in good faith over a nine-day period, because, under the Mental Health Code, "the hospital and doctor" must not only fill out forms for involuntary commitment, but they must also file them with the court. Here, plaintiff notes, neither Dr. Fields nor the hospital obtained a court order for the commitment and treatment, they failed to serve the relevant documents on her, and they failed to complete a second certificate. She asserts:

> "It [is] inconceivable that good faith can be in play here. If [Dr. Fields] only provided the initial inpatient certificate, *then he would be immune* but here he is the proximate cause of the illegal detention. [Dr. Field's] alleged good faith evaporated every time he treated the Plaintiff while she was illegally detained. It further eroded when he kept writing inpatient certificates—seven of them!"

Plaintiff continues that, for immunity to apply, there must be good faith and no negligence. Here, she contends, Dr. Fields was also negligent for failing to protect her from the illegal detention or from taking steps to ensure that her rights were protected. She contends that Dr. Fields was "complicit" in her false imprisonment because the hospital used his inpatient certificates to justify its illegal actions and, without the certificates, the hospital would have had no basis to detain her. She concludes that, as Dr. Fields failed to comply with the Mental Health Code, and any authority

he had derived from the Mental Health Code, he did not act under legal authority and is now liable for the false imprisonment.

¶ 33    Dr. Fields responds that summary judgment was appropriate because there is no evidence that he caused or procured restraint of plaintiff at the hospital. Rather, the evidence shows only that he took part in the process of having plaintiff committed to a subsequent facility by preparing first certificates to comply with the Mental Health Code requirement that such certificates be prepared within 72 hours prior to admission to the subsequent facility. Dr. Fields asserts that the evidence reflects that he did not personally do anything that caused plaintiff to be restrained. For example, there is no evidence that he directed orderlies to keep plaintiff in her room or at Saint Anthony's against her will, and he testified that it is not his custom to instruct orderlies or other personnel to ensure that a patient does not leave the hospital, nor does he act to ensure that the hospital provide security personnel to make sure that a patient does not leave the facility. He contends that the hospital may have kept plaintiff on its premises until it could transfer her to a mental-health facility but that he was simply responsible for examining her and completing successive first certificates for the purpose of expediting her eventual commitment at such a facility—not for her restraint at Saint Anthony's. As plaintiff cannot establish the causal connection between his examinations and her restraint, Dr. Fields argues, her false-imprisonment claim fails. Further, Dr. Fields argues that the trial court properly found summary judgment in his favor on the basis that, even if the first certificates he completed were causally connected to plaintiff's restraint, he is immune from liability under section 6-103 of the Mental Health Code. See 405 ILCS 5/6-103 (West 2014). He argues that plaintiff does not even suggest any negligence on his part and points to no evidence that he did not act in good faith. To the contrary, she challenges his legal defense only by restating her contention that Dr. Fields "participated in daily

acts which caused [her] illegal confinement," without offering any reason to conclude that he did so in bad faith. Indeed, once a bed there was available, plaintiff's ultimate transfer to Glen Oaks was possible because Dr. Fields had completed a first certificate less than 72 hours prior. Dr. Fields concludes that the evidence showed only that he was participating in the lawful process associated with involuntary commitment, his actions do not satisfy the elements of false imprisonment, and the trial court properly granted him summary judgment. We agree.

¶ 34    As plaintiff concedes, to avoid summary judgment on her false-imprisonment claim, she must produce evidence both that *Dr. Fields* detained her and that his detention of her was *unlawful*. See, *e.g.*, *Channon*, 335 Ill. App. 3d at 713 ("Imprisonment under legal authority is not false imprisonment."). Her claim fails on both counts.

¶ 35    First, there is no dispute that Dr. Fields prepared first certificates in compliance with the Mental Health Code, but the evidence shows only that, after each evaluation, he included those certificates in plaintiff's medical chart, not that he did anything to detain her. According to his deposition testimony, which plaintiff did not offer evidence to rebut, the *hospital staff* detained her. While the hospital may have based *its actions* on Dr. Fields's assessment that plaintiff was at risk of harming herself and required treatment at an inpatient mental-health facility, plaintiff presents no evidence that Dr. Fields personally took any action to detain her or ordered that anyone at the hospital do so. And, unlike the case upon which she relies, *Marcus v. Liebman*, 59 Ill. App. 3d 337, 340-41 (1978) (where the court found that threats by a psychiatrist to have a voluntarily hospitalized mental patient involuntarily committed to a state hospital were sufficient to establish restraint for purposes of a false-imprisonment cause of action, such that the court's directed verdict in the psychiatrist's favor during a jury trial was improper), plaintiff here was not voluntarily hospitalized and then subjected to threats of commitment by her treating physician. In fact, other

than preparing first certificates, which is an action contemplated by the statute, plaintiff points to no actions Dr. Fields allegedly took to restrain her. Her false-imprisonment claim fails on this element alone.

¶ 36    Second, although we have determined that plaintiff's claim fails due to lacking evidence that Dr. Fields detained her, we note that we also disagree with plaintiff's argument that Dr. Fields's actions violated the Mental Health Code and, thus, that his alleged detention of her was unlawful. Plaintiff alleges that various Mental Health Code provisions were violated with respect to her involuntary stay at Saint Anthony's. However, even if that is the case, Dr. Fields testified that it was not his role to perform the tasks whose omission formed the basis of the alleged violations. Specifically, Dr. Fields testified that it was not his responsibility to serve plaintiff with documentation under the Mental Health Code, prepare or file petitions with the court, or prepare the second certificate. Indeed, not only did plaintiff not present evidence to the contrary, relevant provisions of the Mental Health Code support Dr. Fields's position. For example, under the Mental Health Code, Dr. Fields *could not* prepare the second certificate, as that certificate must be completed by someone other than the psychiatrist who prepared the first certificate. See 405 ILCS 5/3-610 (West 2014). Further, although his first certificate would, theoretically, accompany a prepared petition for involuntary commitment, the Mental Health Code provides that the *facility director* is responsible for filing the petition, first certificate, and proof of service of the petition and statement of rights upon the patient. See *id.* § 3-611. Plaintiff presented no evidence to suggest that Dr. Fields was the facility director or the director's designee, as defined under the Mental Health Code. See *id.* § 1-104. To the contrary, the evidence showed only that Dr. Fields was a consulting psychiatrist, not compensated by the hospital. As such, plaintiff has not demonstrated

that, to the extent that procedures under the Mental Health Code were not followed, *Dr. Fields* was responsible for those failures.

¶ 37    Further, we disagree with plaintiff's argument that Dr. Fields violated the Mental Health Code by completing multiple first certificates or that, if he did, the good-faith exemption in section 6-103 of the Mental Health Code does not apply. Again, that provision provides, in relevant part, that persons acting in good faith and without negligence in connection with the preparation of certificates for the examination, treatment, or detention of an individual may not incur liability for those acts. See *id.* § 6-103. While we understand that the Mental Health Code provides specific timing requirements for certain actions with respect to involuntary detention, plaintiff does not point to any provision outright precluding the preparation of multiple first certificates, such that doing so, alone, reflects a violation of the statute. Even if, hypothetically, it were a violation, plaintiff also suggests that the very fact that, while the hospital sought room for plaintiff at a mental-health facility, Dr. Fields completed seven first certificates over the course of multiple days reflects the bad faith and negligence necessary to bar application of section 6-103. Again, we disagree.

¶ 38    Preliminarily, plaintiff develops no cogent negligence argument, and we cannot possibly agree that the evidence, viewed in plaintiff's favor, reflects bad faith or negligence in Dr. Fields's preparation of the first certificates. To the contrary, the evidence demonstrates only that Dr. Fields prepared the certificates to comply with the Mental Health Code and to facilitate, in accordance with the statute's requirements, plaintiff's transfer to a mental-health facility. Until that transfer could be effectuated, Dr. Fields could only assess plaintiff and complete the forms he deemed proper so that, when a spot became available for her, the recency requirement for the evaluation was satisfied. Dr. Fields completed the certificates after reviewing plaintiff's medical records—

including regarding her suicide attempt two days earlier—examining her, and developing an opinion that she was at risk of harming herself. He did so believing, in his professional psychiatric opinion, that had he *not* done so, plaintiff would have died from a successful suicide. Accordingly, plaintiff does not present any evidence that Dr. Fields's completion of the certificates was performed negligently or in bad faith. To the extent that other parties, acting in reliance upon Dr. Fields's certificates, held plaintiff while failing to prepare and file with the court a petition and a second certificate, serve her with documents, or release her in compliance with the Mental Health Code, plaintiff either has not pursued legal action against them or has reached a settlement with them.

¶ 39    In sum, plaintiff has not established that Dr. Fields restrained her, that *he* failed to comply with the Mental Health Code, or that, if he did, his actions were not taken in good faith. As his actions in treating plaintiff were not unlawful, the trial court properly granted summary judgment in Dr. Fields's favor on plaintiff's false-imprisonment claim.

¶ 40                         III. CONCLUSION

¶ 41    For the reasons stated, we affirm the judgment of the circuit court of Winnebago County.

¶ 42    Affirmed.

---

**No. 2-21-0038**

---

| | |
|---|---|
| **Cite as:** | *Gibbons v. OSF Healthcare System*, 2022 IL App (2d) 210038 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Winnebago County, No. 17-L-24; the Hon. Donna R. Honzel, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Rene Hernandez, of Law Office of Rene Hernandez, P.C., of Rockford, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Scott L. Howie, Brian C. Sundheim, and Kelly A. Kono, of Pretzel & Stouffer, Chtrd., of Chicago, for appellee. |

---